WAUSAU CANNING COMPANY, Appellant, vs. WOODRUFF and another, Respondents.

*January 14—February 9, 1926.*

*Sales: Of seed peas to be grown: Pro rata delivery in case of crop failure: Entire contract: Damages: Failure of seller to plant sufficient acreage: How pro rata amount determined: Trover: Value of goods converted.*

1. Defendant contracted to grow 2,000 bushels of seed peas for plaintiff, delivery to be prorated in case of crop failure, but failed to plant sufficient seed to produce, under normal conditions, such amount. *Held,* that plaintiff could not predicate a breach of the contract on defendant's failure to tender the entire amount, where it was shown that if defendant had planted the requisite amount under the *pro rata* agreements, plaintiff, by reason of the crop failure, would have been entitled only to the quantity defendant offered to deliver. p. 191.

Wausau Canning Co. v. Woodruff, 189 Wis. 184.

2. Under such contract plaintiff was not entitled to a *pro rata* share of all peas planted by defendant, including peas planted as seed peas for defendant's own purposes, but could demand delivery only of a *pro rata* share of peas which would have been available to fill plaintiff's contract had defendant planted sufficient peas to reasonably produce the yield required. p. 191.
3. While the contract provided that cash payment might be required before shipment of the peas, a demand made by defendant in a letter that plaintiff establish a credit in a named bank was a peremptory and arbitrary demand that plaintiff perform a condition not required by the contract, and constituted a breach for which plaintiff could recover damages upon defendant's failure to deliver. p. 192.
4. The contract having provided for the growing of three varieties of peas for plaintiff, such contract was entire, and, in an action for defendant's breach by failure to deliver, the court erred in restricting plaintiff's damages for failure to deliver one variety only. p. 195.
5. Where an issue on a counterclaim arose as to plaintiff's conversion of certain seed, the jury, in the absence of further testimony, was warranted in finding that the value of the seed alleged to have been converted was the same at the time of actual conversion as at previous times when the seed first came into plaintiff's possession. p. 196.

APPEAL from a judgment of the circuit court for Waukesha county: C. M. DAVISON, Circuit Judge. *Reversed, with instructions.*

The complaint alleges two causes of action. The first is to recover damages for the breach of a contract entered into between the parties May 8, 1922, by virtue of which the defendant agreed "to plant seed peas, sufficient of each variety hereinafter mentioned, to produce under ordinary conditions the quantities herein named, and to plant in the aggregate sufficient seed to cover this and all other similar contracts, and to deliver the resulting crop, less seller's original seed stock, to the buyer in good merchantable condition, and suitable for seed purposes, on or about February 1, 1923, f. o. b. seller's growing station, for shipment to the buyer at Wausau, Wisconsin, or elsewhere, as the buyer may direct." It was further agreed "that in the event of the

crop producing less than the estimated yield, the seller is bound only to deliver *pro rata* under this and similar contracts."

The peas were to be grown in the states of Washington, California, Montana, Idaho, or Wisconsin, and all crops were to be thoroughly screened and hand-picked. The amount of peas which the defendant agreed thus to grow for the plaintiff was specified in the contract to be 2,000 bushels of Alaskas at $3.50 per bushel, 800 bushels of Surprise at $3.50 per bushel, and 1,200 bushels of Perfections at $3.50 per bushel. Terms of payment were specified in the contract, which terms, however, were followed by this provision: "If buyer's financial condition is unknown or unsatisfactory to seller, cash payment may be required, and will be made before shipment, less cash discount of one and one-half per cent."

Defendant took similar contracts from other Wisconsin canneries, by virtue of which he agreed to plant seed peas in the states named sufficient to produce for delivery, in the aggregate, 11,000 bushels of Alaskas. It may be stated here that the issues involved in this case are confined to the brand of peas known as Alaskas. The defendant planted his peas in the state of Washington on the assumption that under normal conditions he would obtain a yield of six-fold, which means that he would receive his seed back and have five times the amount of the seed planted for the purpose of delivery on these contracts. It is conceded that this was a reasonable assumption, based upon the experience of pea planters in the state of Washington. In order to produce 11,100 bushels of peas, therefore, defendant should have planted 2,220 bushels. He actually planted 846 bushels, so that at the very beginning there was a failure on his part to plant sufficient peas to yield the total amount which he had contracted to deliver to Wisconsin canneries. There was an almost total failure of the Alaska pea crop in Washington during that season. From the 846 bushels planted defend-

ant obtained a yield of 1,557 bushels of Alaska peas, which returned to him the amount of seed planted and left 705 bushels for delivery upon his contracts. So that had he planted the amount of peas which he should have planted to have produced a crop which he contracted to deliver, it is apparent that he could have delivered, and the buyers would have been entitled to, but a small proportion of the amount contracted for.

It became apparent rather early in the season that the crop of Alaskas in the state of Washington would be a failure, and defendant arranged with all of the canneries of Wisconsin with whom he had contracted to deliver Alaska peas that they would accept Canadian-grown Alaskas in fulfilment of their contracts, and pursuant to such arrangements he did deliver to most of the Wisconsin canneries Canadian-grown Alaskas to an amount equal to fifty per cent. of the amount of their contracts. Such an arrangement was not consummated with the plaintiff, and on January 18th he offered to deliver to plaintiff 20,000 pounds, or 333⅓ bushels, of Washington-grown Alaska peas in fulfilment of their contract. Two letters having a very important bearing upon the rights of the parties are here set forth, one written by the *Wausau Canning Company* to the defendant under date of January 17, 1923, and the other written by the defendant to the *Wausau Canning Company* under date of January 18, 1923, it being apparent that these letters met in transit. Neither of these letters was ever answered. They were as follows:

*"Woodruff Seed Company,*
            "Seattle, Washington:

"Gentlemen: Referring to a contract, dated May 8, 1922, covering the purchase from you of 2,000 bu. Alaska Seed Peas, 800 bu. Surprise Seed Peas, 1,200 bu. Perfection Seed Peas, All at $3.50 per bushel, f. o. b. point of shipment less freight to Wausau, we observe this contract provides for shipment on or about February 1, 1923,

"Please be advised that we are prepared to, and are ready and willing to live up to the letter and spirit of this agreement, and while we do not demand shipment to be made on exactly the first day of February, we do expect you to make the delivery in accordance with the terms and conditions of this contract, in ample time for the seed peas to be available for our use in planting our crop of 1923.

"Yours very truly,
"WAUSAU CANNING COMPANY."

"*Wausau Canning Company,*
"Wausau, Wisconsin.

"Gentlemen: We have your contract given us May 8, 1922, for delivery after harvest, 1922, shipment on or about February 1, 1923, as follows: 2,000 Bushels Alaska Peas at $3.50 per bushel, 800 Bushels Surprise Peas at $3.50 per bushel, 1,200 Bushels Perfection Peas at $3.50 per bushel. The terms of the contract provide that, in case of a crop shortage, we are to deliver to you only such quantities as are harvested over and above the stock seed which we planted, reserving stock seed for ourselves.

"We have had very poor crops of Alaska peas this year. We planted your Alaskas in Latah, Washington. Our average yields from our crops of Alaskas were less than 200 lbs. per acre planted, over and above stock seed. We planted 100 acres to fill your contract.

"We will deliver you on a basis of 200 lbs. per acre, or approximately 20,000 lbs. on your contract for 2,000 bushels.

"We very much regret this shortage, but the peas did not grow, and we do not feel that we care to ship seed on your contract other than seed which was grown for you.

"We will deliver you Surprise peas 100 %.

"We will deliver you Perfection peas 100 %.

"The terms of the contract provide that we reserve the right to demand cash for these peas, and the *Wausau Canning Company* have agreed that they will pay cash for the peas, less a discount of 1½ per cent. before the peas are shipped.

"The financial standing of the *Wausau Canning Company* is unknown to us, and we do not care to ship these peas under any other conditions.

"We therefore hand you herewith invoices for the peas.

"We request that you establish a credit with the Irving National Bank of New York for the amount of these invoices, payment to be made to us upon our delivery to said bank of bills of lading covering the above quantity of seeds. Your failure to do this will necessitate our selling the peas upon the open market, and will also necessitate our looking to you for any loss incurred.

"We ask that you give us a definite reply on or before February 1, 1923, at this office, as to what your intentions are in this matter.

"Very truly yours,    WOODRUFF SEED COMPANY.
                        "Alling Woodruff, Pres."

These letters apparently marked the termination of all negotiations between the parties with reference to their rights and liabilities under this contract. The defendant delivered no peas of any of the varieties mentioned in the contract, and plaintiff brought this action to recover damages resulting from an alleged breach of the contract on the part of the defendant in failing to make delivery of the amounts and quantities of peas to which plaintiff was entitled under and by virtue of the terms of the contract.

Another cause of action set forth in the complaint was for the value of bags which the plaintiff shipped to the defendant to be used by him in making shipments of peas to the plaintiff. These bags were not used for shipping any peas to the plaintiff and they were never returned.

The answer of the defendant set up two counterclaims, in the first of which it was alleged that plaintiff was indebted to him for 800 pounds of beet seed sold and delivered to the plaintiff, of the reasonable value of sixty cents a pound, and for eight sacks, delivered with the beet seed, of the reasonable value of forty-five cents each, making a total indebtedness of $483.60.

For a second counterclaim it is alleged that in January, 1921, the defendant shipped to the plaintiff 85 bushels of Horsford seed peas, 347 bushels of Rice's No. 13 seed peas,

which peas were shipped in 173 seamless bags; that said peas were forwarded in a car with other peas that had been sold by the defendant to plaintiff, and that the same were received and taken possession of by the plaintiff; that prior to the commencement of this action the defendant demanded from the plaintiff the said seed peas and that plaintiff refused to deliver the same to the defendant; that the peas were reasonably worth the sum of $1,946.25, and the bags were reasonably worth the sum of $69.20, and that the plaintiff is indebted to the defendant, by reason of such alleged conversion, in the sum of $2,015.45.

The issues were tried before a jury, and a general verdict was returned in favor of the defendant for the sum of $1,620.26. From a judgment entered in favor of the defendant on this verdict plaintiff brings this appeal.

For the appellant there were briefs by *Jacobson & Malone* of Waukesha, and oral argument by *M. A. Jacobson.*

For the respondents there was a brief by *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *M. L. Lueck* and *Royal F. Clark.*

Owen, J.    The principal question to be considered is that of the right of the plaintiff to recover damages as and for a breach of the contract.    It is claimed that the contract was breached in the first place when the defendant failed to plant sufficient seed to produce the amount of peas which he had contracted to deliver to the Wisconsin canneries.    It does not seem necessary for us to determine with precision the exact effect of defendant's failure to plant sufficient seed to produce the amount of peas which he had contracted to deliver to Wisconsin canneries.    Granting that it was such a breach as would justify the plaintiff in terminating the contract and making other arrangements for securing its peas, the fact remains that it did not terminate the contract, and it further appears that the defendant offered to deliver to plaintiff practically, if not exactly, the amount of peas to

which it was entitled under the contract. The peas planted by the defendant yielded a return available for delivery under the contract of eighty-three and one-third per cent. of the amount of peas planted. Had defendant planted 2,200 bushels of peas—the amount which he should have planted with a reasonable expectation of producing the amount of peas which he had contracted to deliver,—he would have had a yield of 1,850 bushels available for delivery on his contracts aggregating 11,100 bushels. Plaintiff's *pro rata* proportion of 1,850 bushels would have been represented by the fraction 20-111, or 333⅓ bushels, which is exactly the amount that the defendant offered to deliver by its letter of January 18th. We hold, therefore, that no breach of the contract can be predicated upon the failure of the defendant to tender the amount of peas to which the plaintiff was entitled under the contract.

We should perhaps refer to a contention made by the appellant in this connection. It appears that the defendant planted a quantity of "Alaskas" in the state of Washington for the purpose of producing a stock of seed peas for his own purposes. Appellant contends that the amount of peas produced from this planting should be considered in arriving at the amount of peas to which plaintiff is entitled. This cannot be so. The plaintiff is not entitled to a *pro rata* share of all peas planted by the defendant in the state of Washington during the season of 1922. It can demand a delivery of only the *pro rata* proportion of the yield which would have been available to fill plaintiff's and all similar contracts had the defendant planted sufficient peas to reasonably produce the yield required by such contracts. As we have already seen, that amounts to 333⅓ bushels, which amount the defendant by his letter of January 18, 1923, offered to deliver.

The appellant further contends that the letter of January 18th, written by defendant to plaintiff, prescribes a peremptory and arbitrary method of payment not justified by

the terms of the contract, and one with which the plaintiff was under no obligations to comply. It will be noted that the contract authorized the defendant to demand cash payment before shipment. With this condition plaintiff was under obligations to comply, unless compliance therewith was excused or the attitude of the defendant indicated that compliance therewith would be a futile proceeding. It is conceded that plaintiff did not at any time tender cash in payment of the peas. The letter of January 18th, written by the defendant to the plaintiff, contains the following:

"The terms of the contract provide that we reserve the right to demand cash for these peas, and the *Wausau Canning Company* have agreed that they will pay cash for the peas, less a discount of one and one-half per cent. before the peas are shipped.

"The financial standing of the *Wausau Canning Company* is unknown to us, and we do not care to ship these peas under any other conditions.

"We therefore hand you herewith invoices for the peas.

"We request that you establish a credit with the Irving National Bank of New York for the amount of these invoices, payment to be made to us upon our delivery to said bank of bills of lading covering the above quantity of seeds. Your failure to do this will necessitate our selling the peas upon the open market, and will also necessitate our looking to you for any loss incurred."

We construe this language to be a peremptory and arbitrary demand that plaintiff do something not required of it by its contract. While the contract reserved to the defendant the right to demand payment in cash before shipment of the peas, it did not authorize it to demand that the plaintiff establish a credit with a bank in the city of New York, or elsewhere, as a condition precedent to the shipment of the peas. It is argued that the purport of this language was but a suggestion on the part of the defendant that the establishment of credit with the New York bank would be accepted as cash payment, that it did not foreclose the

plaintiff from tendering cash payment, and that a reasonable course on the part of the plaintiff would have been to have answered this letter protesting against the requirement imposed, and to again give assurance that it was prepared to make the cash payment required by the contract. However, we think it very clear that the language of the letter was in the nature of a final ultimatum which definitely advised the plaintiff that unless it established a credit with the New York bank the peas would be sold upon the open market and that the defendant would look to the plaintiff for any loss incurred. Plaintiff's letter to defendant of January 17th conveyed assurance that it was prepared and was ready and willing to live up to the letter and spirit of this agreement. There was just as much obligation on the part of the defendant to answer plaintiff's letter, withdrawing the demand that credit be established with a New York bank, as there was on the part of the plaintiff to protest against the unauthorized demand; in fact, the failure of the defendant to reply to the letter of the 17th was thoroughly consistent with the final tenor of its demand.

In 2 Williston on Contracts, § 676, it is said that there are three clear grounds which will excuse the non-performance of a condition of a contract, the third of which is, "facts showing that even if the condition were performed, the promise would not have been kept; and that for this reason only the condition had not been performed." It is quite clear that the plaintiff was justified in construing the terms of this letter as an ultimatum with reference to the manner of payment and that further efforts or negotiations in this respect were useless.

In 5 Page on Contracts (2d ed.), § 2904, it is said that "If, however, one party manifests his intention in unequivocal language not to perform the contract unless the adversary party consents to a modification thereof, this may amount to a breach, but it cannot relieve him from liability

under his contract," and reference is made to cases sustaining and illustrating the doctrine in the following language:

"If one of the parties to the contract notifies the adversary party that he will not perform unless such adversary assents to the modification of the contract by the addition of certain new terms, such conduct amounts to a renunciation of the contract. *Trowbridge v. Jefferson Auto Co.* 92 Conn. 569, 103 Atl. 843; *Johnson Forge Co. v. Leonard,* 3 Penn. (Del.) 342; *Stephenson v. Cady,* 117 Mass. 6; *Blackburn v. Reilly,* 47 N. J. L. 290, 1 Atl. 27; *National C. Co. v. Hudson River W. P. Co.* 192 N. Y. 209, 84 N. E. 965. If a party to a building contract demands that the adversary party assent to the modification of the plans before he proceeds with performance, such conduct is renunciation which the adversary party may treat as breach. *National C. Co. v. Hudson River W. P. Co.* 192 N. Y. 209, 84 N. E. 965. If A. has agreed to construct an ice plant and refuses to complete it unless the adversary party will waive a claim for damages, such refusal is a breach. *Bryson v. McCone,* 121 Cal. 153, 53 Pac. 637. A refusal to perform a contract of sale unless the adversary party consents to a modification of the price, amounts to a renunciation of the contract. *Trowbridge v. Jefferson Auto Co.* 92 Conn. 569, 103 Atl. 843. If a contract for the sale of goods provides for its sale on credit, the refusal of the seller to deliver the goods unless the buyer will deliver notes for the purchase price thereof before such goods are delivered, amounts to a renunciation of the contract (*Petersburg F. B. & T. Co. v. American C. M. Co.* 89 Ohio St. 365, 106 N. E. 33, L. R. A. 1915 B, 536), especially if the seller demands that such notes be delivered at a place other than that fixed by the contract for the delivery of the goods. *Petersburg F. B. & T. Co. v. American C. M. Co., supra.*"

While the demand made by the defendant in the instant case was not in express terms a demand that the terms of the contract be rewritten, it was nevertheless a refusal to perform unless the plaintiff did something not required by the terms of the contract, which was in effect a demand for

a change in the terms of the contract.  Our conclusion is that the demand contained in the letter of the 18th constituted a breach of the contract on the part of the defendant.  It excused further performance on the part of the plaintiff, and upon the defendant's failure to deliver, the plaintiff had a good cause of action for the breach of the contract.  The only question of fact to be submitted to the jury on this cause of action was the question of plaintiff's damages by reason of 'the breach.

During the course of the trial plaintiff offered to prove its damages by reason of the failure of the defendant to deliver any and all of the peas specified in the contract.  The court, however, confined proof in this respect to the loss sustained by the plaintiff by reason of the failure to deliver the Alaska peas only.  This was error.  The contract is entire.  *New Richmond R. M. Co. v. Armquist,* 170 Wis. 130, 174 N. W. 557; *Washburn-Crosby Co. v. Kubiak,* 175 Wis. 291, 185 N. W. 162.  Plaintiff's damage is the loss it has sustained by reason of the failure to deliver not only the Alaska but all other peas specified in the contract.

The disputed issue involved in the counterclaim was whether plaintiff had converted 300 pounds of beet seed and 347½ bushels of Rice's No. 13 pea seed.  The testimony upon this subject was conflicting and plainly constituted an issue for the jury.  This is really not seriously controverted, but appellant claims that there was no evidence upon which the jury could find the value either of the beet seed or of the pea seed at the time of conversion.  The only testimony in the case concerning the value of the seed was that of the defendant, who testified that at the time the beet seed came into possession of the plaintiff it was worth sixty cents a pound, and that upon the occasion of the first demand made by the defendant on the plaintiff for the pea seed it was worth from $4.50 to $5 per bushel.  Appellant contends that the value of the beet seed at the time it came

into the possession of the plaintiff furnishes no evidence of the value thereof at the time of its conversion, which was several months later, and that, similarly, the value of the pea seed at the time of the first demand constitutes no evidence of the value of the pea seed at the time of the conversion, because the actual conversion took place some months thereafter. Upon this point we think appellant is in error. There is no presumption that the value changed during the interim, and if plaintiff was not satisfied with the value of the seed as fixed by the testimony of the defendant it was at perfect liberty to show that the value of the seed upon the respective dates testified to by the defendant was not the true value thereof at the time of the conversion. In the absence of any such testimony the jury was warranted in finding that the value of the seed was the same at the time of conversion as upon the dates to which the defendant testified.

It is quite apparent that the second cause of action set forth in plaintiff's complaint, and the causes of action set forth in defendant's counterclaim, were properly tried and submitted to the jury, and that the verdict correctly disposes of those causes of action. The trouble with the verdict is that the jury evidently disallowed plaintiff any damages upon the first cause of action. A new trial should be had as to that cause of action, but it seems unnecessary that the parties should be put to the expense of retrying the second cause of action set forth in the complaint and the causes of action contained in the counterclaim. A new trial will be granted, therefore, upon the first cause of action set forth in plaintiff's complaint. The verdict of the jury will stand as a disposition of the second cause of action set forth in plaintiff's complaint and of the causes of action set forth in defendant's counterclaim.

*By the Court.*—Judgment reversed, and cause remanded with instructions to grant a new trial upon the first cause

of action set forth in the plaintiff's complaint: the verdict of the jury herein to stand as a disposition of the issues raised upon the second cause of action set forth in the plaintiff's complaint and of the causes of action set forth in defendant's counterclaim.