NICHOLAS D'ONFRO et al., Copartners Doing Business under the Name of D'ONFRO CONSTRUCTION Co., Appellants, *v.* STATE OF NEW YORK, Respondent.   (Claim No. 24864.)

Third Department, November 14, 1945.

*Jerome Beaudrias,* attorney for appellants.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; John R. Davison, Assistant Attorney-General* of counsel), for respondent.

HILL, P. J. Appeal by the claimants, copartners, from a judgment of the Court of Claims dismissing on its merits their claim for the reasonable value of the work and materials which they furnished under a contract approved by the State Department of Public Works on May 28, 1936, which had been earlier approved by a representative of the United States Secretary of Agriculture. The value of the labor and material is asserted to be $720,314 upon which $343,620.31 has been paid. The contract for labor and material, for which $900,013.40 was to be paid, required the work to be completed December 15, 1936. For this sum claimants were to furnish materials, appliances, tools and labor for the construction of the Henry Hudson Parkway and Riverdale Avenue grade separation structures. The entire length was .79 of a mile, connecting Riverside Drive in New York City with Saw Mill River and Hutchinson Parkways in Westchester County. There were four parallel lanes of highway, the most easterly and westerly for the north and south bound traffic which formerly passed over Riverdale Avenue, and the two center lanes for the north and south bound traffic over the Henry Hudson Bridge which connected the Drive and the Parkways. Two bridges also were to be constructed. The State authorities desired to open the highway for traffic on December 12th, and in late November, Commissioner Brandt of the State Department of Public Works visited the location. He says: "The weather had become such at that time that I do not think he could have laid concrete pavement. That is the reason we laid the temporary bituminous pavement. Q. You did tell him to do it, whether he could or not? A. Yes." The highway was open for traffic on December 12th. The supplemental contract for the bituminous pavement was dated December 21, 1936, but the work was started nearly a month earlier, and was not fully completed until about December 28th. On December 29th, the State gave a ten-day notice to claimants to complete the entire work, and canceled the contract on January 9th. Later the unfinished portion of the work was let to another contractor who completed it in November, 1937, and apparently at a cost within the original contract figures made with claimants, as no counterclaim was set up by the State in this trial.

Many and various, and in some instances picayune, are the charges made by the State as to claimants' delays prior to December 15th when the original contract by its terms was to be finished; likewise, many and various, and in some instances not too convincing, are the excuses given by claimants as reasons for the delays. Some of the assertions by the claimants are justified. There were two so-called Immick contracts, one at the north, the other at the south, of claimants' work. These overlapped a considerable portion of the location where the work was to be performed by claimants, and were to have been completed on August 1 and October 1, 1936. These limits were extended two months, and the work was not finally completed until the Spring of 1937. Under the location where claimants were to work water mains, gas pipes and telephone and telegraph conduits were to be installed. These installations were delayed beyond expectations, and furnished an excuse for claimants' failure to complete. The Immick contracts were of considerable size, each involving something like a quarter of a million dollars. Claimants were advised that they could not excavate certain parts of the work unless they desired to do the work for Immick without hope of compensation. The State authorities ruled that under the contract claimants were required to remove the rock from trenches ten to fifteen feet deep by manual labor, the fragments being passed hand over hand by men on scaffolding and finally laid on the surface of the earth. If a rock was too big for one man to handle, it was broken into fragments. It is asserted that this antique method was required by the State in order to comply with the demands of the labor unions that work be done by hand. Ultimately and after considerable delay and loss, the use of a crane was permitted. No suggestion was made by the State on December 15th, the completion date, that claimants should terminate their work. They were permitted to continue and to finish the temporary highway and to do other work. There is a dispute as to the estimates for work done in December, 1936, and up to January 9, 1937, but it appears that between $30,000 and $40,000 for labor and material was expended by the claimants. Some was compensated for by over-payments on previous estimates, but it is unquestioned that over $50,000 in all was due and owing to claimants on January 9th when they were put off the job. Engineers of reputation and standing testified on behalf of the claimants that the work performed prior to the termination was of substantially the value earlier mentioned as the amount claimed. Beginning in

November, 1936, and until the cancelation, the State authorities and claimants communicated concerning the delay and as to the items which the State desired to have completed at an early date. One of these, dated December 14th from the State to the claimants, listed two items as to walls that were to be completed. Concerning these the communication stated: " Comment: Nothing is in the way of the R wall, E. Abutment and SE wing wall of Br. [bridge] 2-A, on the NE wing wall, the Empire City needs to complete their ducts but this can be constructed at the same time, as the new ducts will have to be supported by the Contractor. ECS is Practically done and present indications are that the Tel. Co. will be out of there in about 2 weeks." This communication stated a reason for desiring this work to be progressed: " The following work should be begun at once in order to prepare the East Service Road for paving in the early Spring." This and other statements indicate that claimants were led to believe that the State had waived its right to cancel the contract on December 15, 1936. It also indicates that the utilities' delay slowed claimants' progress. The evidence sustains claimants' assertion that there was a waiver by the State of their failure to complete on December 15th. On January 9th, claimants had more than fifty men on the job, and were making a reasonable effort to complete, but were retarded somewhat by weather conditions, utility and Immick delays.

The conduct of the State amounted to a waiver of the time of completion as fixed by the contract; to that extent time ceased to be an essential element, and it could only be restored by notice fixing a reasonable time within which the contract was to be completed. (*Lawson* v. *Hogan*, 93 N. Y. 39; *Schmidt* v. *Reed et al.*, 132 N. Y. 108; *Taylor* v. *Goelet*, 208 N. Y. 253.) In view of the correspondence, the conduct of the parties and the amount of work remaining, ten days was not sufficient time within which to complete the work, and it appears that reasonable progress was being made by claimants. Earlier unexcused delays had been waived by the tacit agreement that the completion date should be extended. The restoration of the time element in the contract could not be effected by an arbitrary and unreasonable requirement. Under the circumstances here presented, the law does not demand that these claimants should suffer a loss of tens of thousands of dollars for their inability to complete within the limited time allowed by the State. (*Taylor* v. *Goelet, supra.*) " The conduct of the parties, while the delay continues, may be such as to indicate a purpose to

keep the contract alive; and such a purpose, once manifested, may not be suddenly abandoned. * * *. While the work was in progress, the plaintiff attempted to rescind the contract and recover his part payments on the ground of delay. There had been no warning that the work was advancing too slowly, and no opportunity offered to the defendant, after notice of the plaintiff's dissatisfaction, to hasten the pace. The court held that without such an opportunity the attempted rescission could not stand." (*Brede* v. *Rosedale Terrace Co.*, 216 N. Y. 246, 249–250.) " Assent to an indefinite extension would have been precarious and extraordinary. There are cases in which such assent has been gathered from the acceptance, express or tacit, of acts of part performance from a party in default." (*Richard* v. *Credit Suisse,* 242 N. Y. 346, 355.) The State permitted the claimants to work, both upon the original and supplemental contracts, after the waived expiration date, and has refused to pay. The waiver of time as an essential element of the contract could have been restored by notice to complete within a reasonable time. A contract, extended as this one had been, may not be terminated without such notice (*General Supply & Const. Co.* v. *Goelet,* 241 N. Y. 28, 34), and the claimants are entitled to recover the value of the labor and material which they furnished, subject to the State's right to a setoff for damage caused by failure to complete the contract in accordance with its terms. (*General Supply & Const. Co.* v. *Goelet, supra,* 36, 37.) The State makes no counterclaim in this proceeding.

It is conceded and found by the Court of Claims that claimants performed work of the contract price of $396,774.19 before they were put off the job on January 9th; that $53,153.98 of that sum has not been paid. Claimants are entitled to this amount. It appears that 10% of the value of labor and materials is fair and reasonable for superintendence, overhead, maintenance of traffic on highways, and like items. This amounts to $39,677.42. Claimants should recover these amounts with interest from January 9, 1937.

BREWSTER, J. (dissenting). I dissent. To my mind the court below correctly determined that the weight of evidence clearly established that claimants breached their contract with the State in failing to progress their work thereunder as called for thereby, and that because thereof, their contract was lawfully and properly canceled as authorized thereby and by section 10 of the Highway Law. The clear weight of evidence sustains the finding that the State did not waive claimants'

breach of contract and that there was nothing to preclude its lawful cancelation on January 9, 1937. Claimants continued their breach openly and defiantly after dissatisfaction had been expressed to them and they had been given ample " opportunity to mend [their] ways." (*Brede* v. *Rosedale Terrace Co.*, 216 N. Y. 246, 250.) I can find no evidence that the State intentionally relinquished its known rights and the burden there was upon the claimants. (*Alsens A. P. C. Works* v. *Degnon Cont. Co.*, 222 N. Y. 34, 37.) After repeated remonstrances the State tolerated claimants' continued failure to progress the work during the contract period and thereafter afforded them reasonable opportunity " to provide necessary materials, tools, appliances and labor to progress the same " all to no avail. But throughout all that there is nothing to indicate that the State at any time relinquished its right to cancel the contract. Waiver " is the voluntary act of the party and does not require or depend upon a new contract, new consideration or an estoppel.   *   *   *.   It is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved." (*Alsens A. P. C.* v. *Degnon Cont. Co.*, *supra.*) If such does not constitute waiver surely an overindulgence of patience or fair treatment may not be said to give rise to it.

Notwithstanding that claimants made and tried their claim in *quantum meruit,* thereby rejecting the contract as a basis of recovery, some of their appeal here is for an award upon claimed unpaid estimates and retained percentages. Such a claim must necessarily be based upon the contract. In addition to the inconsistency of such a claim upon the record before us, it is to be noted that there were provisions in the contract which bar such an award and further, that a defaulting contractor may not recover for the value of work done under an indivisible contract, which theirs was, in the absence of a showing of their substantial compliance with its entirety. (*Steel S. & E. C. Co.* v. *Stock,* 225 N. Y. 173; *Smith* v. *Cowan,* 3 App. Div. 230, affd. on opinion below 157 N. Y. 714; *Smith* v. *Brady,* 17 N. Y. 173; *Champlin* v. *Rowley,* 13 Wend. 258.) Moreover, as is pointed out in the opinion below, " Claimants recognized this variance in that they did not in their requests to find ask for the amounts of the estimates " and that: " Also the State may have had some defense to an action based on the contract which was not presented in its defense against the claim for the reasonable value of the work done."

The judgment appealed from should be affirmed, with costs.

All concur with HILL, P. J., except BREWSTER, J., who dissents in a memorandum.

Judgment dismissing claimants' claim upon the merits is reversed on the law and facts, with costs and disbursements to the claimants, and judgment for the sum of $92,831.40, with costs and interest from the 9th day of January, 1937, is awarded claimants.

The court finds the value of the work done to be as found by the Court of Claims in claimants' requests to find, numbered 50, and the payments made to be as therein stated and found, also as found in the decision of the Court of Claims by its paragraph numbered 73. The court further finds all of the findings contained in claimants' requests to find which were found by the Court of Claims, and the following findings in claimants' requests to find which were refused by the Court of Claims; Nos. 15, 16, 21, 22, 25, 29, 30, 31, 44, 47, 53, 54. This court further finds that claimants are entitled to recover the $53,153.98 as the value according to contract prices of the work done prior to January 9, 1937, and 10% of $396,774.19 to compensate for overhead, superintendence, keeping highways under construction open for traffic, and other items not included in the contract, in all the sum of $92,831.40 with interest as earlier stated.

The court reverses the following findings made by the Court of Claims in the decision: Nos. 21, 22, 23, 26, 27, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 44, 45, 49, 52, 53, 55, 56, 57, 58, 62, 64, 65, 66, 67, 69, 70, 71, 75 and 76, and disapproves of the conclusions of law contained in the decision.

The court also reverses the following findings made by the Court of Claims in the document printed and headed " State's Requests to find ": Nos. 7, 12, 13, 14, 15, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30 and 33, and disapproves the conclusions of law made and found by the Court of Claims in the document entitled " State's Requests to find."