STOLPER STEEL PRODUCTS CORPORATION, Appellant, v. BEHRENS MFG. COMPANY, Respondent.

*May 2—June 7, 1960.*

480

For the appellant there was a brief by *Poss, Toelle & Schuler,* and oral argument by *John H. Ames,* all of Milwaukee.

For the respondent there was a brief and oral argument by *A. Warren Cahill* of Waukesha.

CURRIE, J.   The principal issue on this appeal is whether the defendant purchaser was required to give the plaintiff manufacturer notice, which would have fixed a reasonable time within which the plaintiff must have completed performance on its part, as a condition precedent to the defendant's canceling the contract.

The plaintiff knew when it accepted the defendant's order that the portable bubbler was a seasonable item, the principal sale of which took place just prior to the football season. Time, therefore, was of the essence of the contract. However, the evidence clearly establishes as a matter of law that the defendant by its conduct did waive performance beyond the agreed extension date of August 25th and consented to the plaintiff's continuing its operations under the contract beyond such date.

The conduct of the defendant evincing such waiver and consent consists of the following: On September 13th, Behrens, defendant's president, came to the plaintiff's plant and agreed to the substitution of the electropolish finish. Defendant's agent Ross on September 21st picked up four of the bubblers from the place of business of the electropolisher, and the defendant retained and accepted three of the same. Ross took Hauk, the maker of the dies, to plaintiff's factory on September 23d so that Hauk could inspect the plaintiff's operations and straighten out difficulties in performance encountered by the plaintiff. On October 7th Behrens in behalf of the defendant picked up the dies at plaintiff's plant and stated to plaintiff that he wished to repair and polish them, thus intentionally inducing the plaintiff to believe that such dies would then be returned to the plaintiff for its operations under the contract.

The rule of law which we deem governs this case is set forth in 1 Black, Rescission and Cancellation (2d ed.), p. 623, sec. 219:

"Even where time is made the essence of the contract, this provision may be waived by the party for whose benefit or protection it is inserted, either expressly or by extending the time for payment or performance or by granting indulgence to the other party in this regard; and when such a waiver has been made, he cannot arbitrarily and summarily declare a forfeiture of the contract for delay, but must first demand payment or performance and give the other party a reasonable time and opportunity, after such demand, to comply."

This same principle is stated in 17 C. J. S., Contracts, p. 918, sec. 435, as follows:

"So, where time for performance has been extended with no intention manifested to hold to literal performance, or a provision wherein time is made of the essence is waived, notification and a reasonable time for compliance are necessary."

Both of the foregoing extracts from Black and Corpus Juris Secundum were quoted with approval by this court in its opinion in *Guentner v. Gnagi* (1951), 258 Wis. 383, 392, 46 N. W. (2d) 194. Although the facts in the *Guentner Case* do not parallel those of the instant case, the court by quoting such extracts placed its stamp of approval thereon. They apply particularly to a situation where time was made of the essence by the original contract, which is the situation that here confronts us.

In *D'Onfro v. State* (1945), 270 App. Div. 9, 59 N. Y. Supp. (2d) 205, the plaintiff contractor had entered into a highway-construction contract with the state of New York which called for completion on December 15, 1936. By its conduct the state led the plaintiff to think that the completion date would not be insisted upon and waived past delays. On December 29, 1936, the state gave the plaintiff notice that he was required to complete performance in ten days' time. At the expiration of such ten days' period the state gave notice of cancellation. The court held that under the circum-

stances ten days was not a reasonable time in which to require complete performance by the plaintiff and permitted recovery of damages by the plaintiff. In its opinion the court stated (270 App. Div. 12, 59 N. Y. Supp. (2d) 208) :

"The conduct of the state amounted to a waiver of the time of completion as fixed by the contract; to that extent time ceased to be an essential element, and it could only be restored by notice fixing a reasonable time within which the contract was to be completed. *Lawson v. Hogan,* 93 N. Y. 39; *Schmidt v. Reed,* 132 N. Y. 108, 30 N. E. 373; *Taylor v. Goelet,* 208 N. Y. 253, 101 N. E. 867, Ann. Cas. 1914D, 284."

In view of the foregoing authorities, we determine that the defendant had no right to cancel the contract on October 17, 1955, without first having given the plaintiff notice fixing a final date of completion which would have afforded the plaintiff a reasonable time in which to complete performance on its part. Because of such wrongful termination of contract, the plaintiff is entitled to recover as damages its reasonable costs for labor and materials incurred by it until the date of cancellation, or the contract price for the 100 units, whichever is lower. *Bishop v. Price* (1869), 24 Wis. 480, and *Manning v. School Dist.* (1905), 124 Wis. 84, 105, 102 N. W. 356. In this case the contract price of $24.50 per unit, or $2,450 in all, governs the amount of the plaintiff's damages even though its actual costs were more than $500 in excess thereof.

An additional defense to the plaintiff's cause of action is advanced in defendant's brief. Such defense is that the plaintiff's request for an increase in price constituted an anticipatory breach on its part that justified the defendant in canceling the contract on October 17, 1955.

In order to constitute an anticipatory breach of a contract based upon a request for a modification of terms, such re-

quest must be coupled with an absolute refusal to perform unless such request is granted. Restatement, 1 Contracts, p. 475, sec. 318 (a) ; 12 Am. Jur., Contracts, p. 972, sec. 393 ; 17 C. J. S., Contracts, p. 912, sec. 428. For a case in which a demand for a price increase was coupled with a refusal to perform unless the same was granted, see *Trowbridge v. Jefferson Auto Co.* (1918), 92 Conn. 569, 103 Atl. 843. In the instant case the plaintiff did not threaten nonperformance if the requested price increase was not granted.

The defendant cites the cases of *Wausau Canning Co. v. Woodruff* (1926), 189 Wis. 184, 207 N. W. 421; *Amberg Granite Co. v. Marinette County* (1945), 247 Wis. 36, 18 N. W. (2d) 496; and *Hubbard Steel Foundry Co. v. Federal Bridge & Structural Co.* (1919), 169 Wis. 277, 171 N. W. 949, in support of its anticipatory-breach contention. The *Wausau Canning Co. Case* is distinguishable from the instant one because the seller, who there demanded a modification of contract, coupled such demand with a threat to sell the contracted goods to others if the buyer failed to accede to such demand. In the *Amberg Granite Co. Case* there was a request for a price increase, but a close reading of the opinion discloses that the court attached little, if any, importance to this request in finding an anticipatory breach. The rationale of the decision was that Marinette county was justified in rescinding the contract because it clearly appeared that the plaintiff was not going to be able to perform. The *Hubbard Steel Foundry Co. Case* involved no request for a price increase, but the contractor, like the plaintiff in the *Amberg Granite Co. Case,* had demonstrated complete inability to perform the contract which justified rescission by the other party.

However, there is a more-potent reason why the defendant cannot prevail on the theory of anticipatory breach. This

is because it never elected to treat the plaintiff's request for a price increase as such an anticipatory breach. Such request for a price increase is not mentioned by the plaintiff in its letter of cancellation of October 17, 1955, as a ground for rescission. Neither does the defendant's answer to the complaint plead anticipatory breach as a defense.

1 Black, Rescission and Cancellation (2d ed.), p. 569, sec. 202, states:

"To warrant a rescission on this ground [anticipatory breach], the refusal to perform must be distinct, unequivocal, and absolute, and *must be acted upon as such by the party to whom the broken promise was made.*" (Emphasis supplied.)

In its opinion on rehearing in *Woodman v. Blue Grass Land Co.* (1905), 125 Wis. 489, 495, 103 N. W. 236, 104 N. W. 920, this court gave recognition to the necessity of a party's electing to treat conduct of the other party as constituting an anticipatory breach. Mr. Justice WINSLOW in such opinion declared (p. 495):

"The law with regard to an anticipatory breach of an executory contract doubtless is that the other party must treat it as a breach, and that if he do not do so, but continue to demand performance, he will be held to have kept the contract alive for the benefit of both parties."

See also syllabus 1 of *Washburn-Crosby Co. v. Kubiak* (1921), 175 Wis. 291, 185 N. W. 162, which states:

"The effect of an expression by the buyer, prior to the time of performance of his contract, of an intention not to perform, is to give the seller an opportunity to then treat the contract as thereby canceled, or to elect to hold and consider the contract still in force and insist upon performance, and thereafter seek the appropriate remedy for either, but there must be an election in some manner of one or the other alternative; . . ."

We deem that the acts of the defendant in accepting deliveries after the plaintiff's request for a price increase and in assigning as its sole reason for rescission, plaintiff's failure to complete performance by August 15, 1955, amount to an election not to treat such request for a price increase as an anticipatory breach. Furthermore, the issue is not properly before us because not pleaded.

*By the Court.*—The judgment is modified by increasing the amount of the plaintiff's damages from $220.50 to $2,450, exclusive of costs, together with interest thereon from September 10, 1958, and, as modified, is affirmed.