WISCONSIN DAIRY FRESH, INC., Appellant, v. STEEL & TUBE PRODUCTS COMPANY, Respondent.*

*June 4—June 28, 1963.*

* Motion for rehearing denied, with $25 costs, on October 1, 1963.

418

For the appellant there were briefs by *Hess & Chernov* of Milwaukee, and oral argument by *Ben L. Chernov*.

For the respondent there was a brief by *Zimmers, Randall & Zimmers* of Milwaukee, and oral argument by *William L. Randall*.

WILKIE, J. The issues on this appeal are as follows:

1. Was the trial court correct in its procedure wherein it failed to render a written opinion and in approving new findings of fact and conclusions of law, without motion or hearing notwithstanding a prior reversal on appeal?

2. What were the terms of the contract between plaintiff and defendant and especially with respect to (a) condition as to 3A and Chicago board of health approval, and (b) payment and delivery?

3. Which party breached the contract and is entitled to recover?

The following findings of fact are material to these issues:

"5. That in December 1955 defendant at the request of plaintiff completed designs for such a tank and delivered the design blueprints therefor to plaintiff; that after further discussions, defendant, in March 1956, offered to manufacture tanks so designed for plaintiff that said tanks would pass through a 30 inch wide walk-in refrigerator, at a price of Two Hundred Sixty Dollars ($260.00) per unit for an order of fifty (50) tanks of one hundred (100) gallon capacity; that thereafter plaintiff made a counter-offer to purchase one hundred tanks (100) from defendant on condition that defendant reduce the purchase price per unit; that on or about March 21, 1956, defendant accepted the counter-offer of plaintiff and the parties entered into an agreement by the terms of which defendant promised to manufacture one hundred (100) tanks per specification—fifty (50) tanks of one hundred (100) gallon capacity, and plaintiff promised to pay the sum of Two Hundred Forty-eight Dollars and Fifty Cents ($248.50) per one hundred gallon (100) unit, and fifty (50) tanks of seventy-five (75) gallon capacity, and plaintiff promised to pay the sum of Two Hundred Thirty-three Dollars and Thirty Cents ($233.30) per seventy-five (75) gallon unit, or a total sum of Twenty-four Thousand One Hundred Dollars ($24,100.00); that both parties relied upon this agreement in their dealings with each other; that on April 4, 1956, plaintiff furnished to the defendant the sum of Five Thousand Dollars ($5,000.00) to enable defendant to proceed with the manufacture of the tanks; and that this agreement contained no undertaking on the part of defendant to secure the approval of these tanks by the Chicago Board of Health;

"7. That in the spring and early summer of 1956, pursuant to plaintiff's plan to develop a captive market for mix, representatives of plaintiff held meetings with prospective customers for the mix; that a representative of defendant attended one of these meetings; and that at such meetings, including the one attended by defendant's representative, the potential customers of mix indicated no interest in the use of such storage tanks;

"8. That defendant was thereby put on notice that the plan of the plaintiff to furnish tanks to retail ice cream mix customers who would purchase large quantities of mix from plaintiff's creamery was being abandoned by plaintiff;

"9. That thereafter, in August 1956, plaintiff advised defendant that plaintiff would not need any tanks during the year 1956 and requested that defendant halt manufacture and fabrication of these tanks indefinitely; and that these acts and words of plaintiff rendered performance of the contract by plaintiff very improbable; and that the conduct of plaintiff constituted a repudiation of the contract;"

Issue 1. *Was the trial court correct in its procedure wherein it failed to render a written opinion and in approving new findings of fact and conclusions of law, without motion or hearing notwithstanding a prior reversal on appeal?* In ruling on the instant case for the first time the trial court did not record the grounds of his decision. Neither did he enter a written decision when the case was remanded to him for the preparation of new findings of fact and conclusions of law. This court has often criticized the practice of a trial court disposing of a case at issue without a written memorandum. In the recent case of *Oosterwyk v. Corrigan* (1963), 19 Wis. (2d) 464, 120 N. W. (2d) 620, the trial court had granted a motion for summary judgment against the plaintiff but failed to file any findings of fact or conclusions of law or a memorandum opinion disclosing the grounds for granting the motion. The court said (p. 473):

"The absence of either or both creates a difficult situation for this court on review because of the inability to determine the basis of the trial court's conclusion. In *Public Service Comm. v. Wisconsin Telephone Co.* (1933), 289 U. S. 67, 69, 53 Sup. Ct. 514, 77 L. Ed. 1036, Mr. Chief Justice HUGHES stated:

" 'We have repeatedly emphasized the importance of a statement of the grounds of decision, both as to facts and law, as an aid to litigants and to this court.'

"This court, likewise, emphasizes the importance of either findings of fact and conclusions of law or a memorandum opinion so as to disclose the grounds upon which the trial court reached its determination."

Not only did the trial court here fail to enter any memorandum, or even an oral opinion, of the grounds for its decision, but when the case was remanded for further proceedings in the trial court, revised findings of fact and conclusions of law were entered as prepared by the defendant and without affording the plaintiff a chance for a hearing on those parts of the findings and conclusions to which it took exception. If it were not for the fact that we are persuaded that the litigation can be settled here as a matter of law from the record, because of the improper procedure in the trial court we would remand the case for a new trial in the interest of justice under the authority given to this court by sec. 251.09, Stats.

Issue 2. *What were the terms of the contract between plaintiff and defendant and especially with respect to (a) condition as to 3A and Chicago board of health approval, and (b) payment and delivery?* The circuit court agreed that the trial court improperly relied upon the "verbal order form" as representing the entire contract between the parties. The circuit court reversed the trial court for this reason. On the instant appeal to this court plaintiff contends that the contract between the parties is embodied in the letter sent to the defendant dated April 4, 1956, and the reply dated April 9,

1956. Defendant, on the other hand, does not contend that the contract is embodied in any one writing, but that the contract consisted of correspondence and conversations between representatives of both parties.

To resolve these contentions necessarily invokes the degree to which parol evidence should be considered. In any event whatever evidence is considered must have a bearing on the terms of the contract under dispute. Only two terms are actually in dispute: (1) Whether the contract contained a condition that the tanks and valves had to meet "3A" and Chicago board of health standards, and (2) the manner of payment and delivery. The latter may be summarily disposed of by resorting to secs. 121.41 and 121.42, Stats. Under sec. 121.41:

"It is the duty of the seller to deliver the goods, and of the buyer to accept and pay for them, in accordance with the terms of the contract . . ."

Nothing in the record indicates that the parties had an express understanding as to manner of payment or as to how the $5,000 should be applied. Thus sec. 121.42, Stats., is controlling. It provides as follows:

"Unless otherwise agreed, delivery of the goods and payment of the price are concurrent conditions; that is to say, the seller must be ready and willing to give possession of the goods to the buyer in exchange for the price and the buyer must be ready and willing to pay the price in exchange for possession of the goods."

In commenting on this section, Professor Williston states that if part of the price is paid in advance, there are concurrent conditions which govern the obligation of the seller and the remaining obligation of the buyer.[1] Thus, the parties are bound by the provisions of sec. 121.42, Stats., as far as payment and delivery are concerned.

[1] See 2 Williston, Sales (rev. ed.), pp. 667, 668, sec. 448.

With respect to the dispute as to quality of the goods, *i.e.*, whether the parties had agreed that the tanks and valves were to meet the standards in question, the parol-evidence rule is material. The trial court in effect relied upon the "verbal order form" as evidencing no such condition, notwithstanding the plaintiff's protestations to the contrary. The circuit court so held. Defendant contends, however, that the record sustains the finding that no such condition existed.

Unlike the issue as to payment and delivery the issue relating to quality requires consideration of the parol-evidence rule because the parties and the evidence are in dispute. The letters relied upon by the plaintiff reflect that the parties agreed that the tanks and valves would meet the standards in question, whereas the "verbal order form" is silent on this point. The record also contains conflicting oral testimony as to the existence of the standards: Plaintiff's witnesses all testified that it was understood the tanks and valves would meet the standards. William Johnson, chief officer of the defendant, testified that as far as he was concerned, any agreement that the tanks and valves had to meet these standards was null and void.

Under the traditional view of the parol-evidence rule, the writing which was intended to embody the entire agreement could not be varied by parol, *i.e.*, changed on its face or added to. Thus, if the "verbal order form" represents such a writing, parol evidence tending to establish the condition in question was not admissible. Defendant, however, does not claim that the "verbal order form" embodies the entire agreement. Under the "partial integration" concept of the parol-evidence rule, which has been adopted as the law in Wisconsin,[2] a contract partially in writing may not be varied by parol as to the terms included therein, but evidence of

---

[2] See *Danielson v. Bank of Scandinavia* (1930), 201 Wis. 392, 230 N. W. 83, 70 A. L. R. 746; also *Morn v. Schalk* (1961), 14 Wis. (2d) 307, 111 N. W. (2d) 80.

consistent additional terms will not be precluded unless the court finds the writing to have been intended also as a complete and exclusive statement of the entire agreement.[3]

The trial court apparently proceeded on the theory that parol evidence was receivable as to this portion of the contract. On appeal, the issue as to terms is whether the trial court's finding of fact that the parties did not agree that the tanks and valves would meet approval by the Chicago board of health, is against the great weight and clear preponderance of the evidence. We think not, and the finding must be sustained.

Issue 3. *Which party breached the contract and is entitled to recover?*

*Claimed breach of contract by plaintiff.* The trial court found that the plaintiff repudiated the contract when it notified the defendant to halt manufacture of the tanks. More specifically, the trial court found: That in early spring or summer of 1956 the defendant became aware that plaintiff's potential customers indicated no interest in the use of plaintiff's tanks; that the defendant was thereby put on notice that plaintiff was abandoning its business plan; that in August of 1956 plaintiff advised defendant that plaintiff would not need any tanks in 1956 and requested defendant to halt manufacture, and that this conduct constituted a repudiation of the contract.[4] Based upon these findings, the trial court granted judgment to the defendant on its counterclaim.

The trial court apparently invoked the provisions of sec. 121.64, Stats., which provides the seller may maintain an action for damages for nonacceptance where the buyer wrongfully neglects or refuses to accept and pay for the goods, and in particular, applied the provisions of sub. (4)

---

[3] See generally McCormick, Evidence (hornbook series)—Parol Evidence Rule, pp. 432, 433, sec. 212.

[4] See Findings of Fact, Nos. 7, 8, and 9, *supra.*

which sets down a rule of damages where the buyer repudiates the contract or notifies the seller to proceed no further therewith. In ruling in favor of the defendant the trial court erred in two respects: (1) In construing plaintiff's conduct as repudiation, and (2) in assuming that this alone allows defendant to recover on its counterclaim.

It is a fundamental rule of contract law that where payment and delivery (or any other conditions) are concurrent obligations, neither party can maintain an action against the other for breach of the latter's obligations, without first making an offer of performance himself, and conveying such offer to the other party.[5] On the other hand, if plaintiff repudiated the contract prior to the time defendant was to deliver the tanks, defendant would be excused from performance, and could maintain an action for damages.[6] However, if defendant had previously committed a substantial breach of contract prior to plaintiff's alleged repudiation, defendant could not be excused from tendering performance, and failing to do so could not maintain its action for damages. Thus, if defendant was not willing and able to render performance at the time of repudiation an action for damages based upon repudiation would not lie.[7]

The record is not clear as to the sequence of events leading up to and including the alleged repudiation and the defendant's insistence on C.O.D. delivery.[8] Defendant contends that the repudiation occurred prior to the time it demanded C.O.D. terms. Plaintiff, on the other hand, contends that it advised the defendant to hold up manufacture of the tanks,

[5] 2 Williston, Sales (rev. ed), pp. 666, 668, 669, sec. 448.

[6] 4 Corbin, Contracts, p. 920, sec. 977.

[7] Id., at pp. 924, 925, sec. 978.

[8] See letter written by defendant to plaintiff, dated August 21, 1956, where defendant demanded that future shipments would be conditioned upon plaintiff's paying C.O.D. as per agreed price, minus, however, a pro rata credit based on the $5,000 deposit. Under sec. 121.42, Stats., defendant's demand would be a breach of contract.

subsequent to defendant's demand as to payment. Although there is some doubt about the findings in favor of the defendant on this point these findings are not against the great weight and clear preponderance of the evidence.

But defendant's cause of action stands or falls on the legal consequences which may be attached to plaintiff's request to halt manufacture. The trial court's finding that the plaintiff advised the defendant to halt manufacture indefinitely is against the great weight and clear preponderance of the evidence. The record clearly shows that the only request by plaintiff, made sometime between August and October, 1956, was to the effect that plaintiff would not need any more tanks for 1956 since the summer season was almost over (and the ice-milk business is predominantly seasonal) and that plaintiff wanted defendant to halt production until January or February, 1957.

Most jurisdictions hold that in order to constitute an anticipatory breach of contract (repudiation), there must be a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.[9] Doubtful and indefinite statements that performance may or may not take place and statements that, under certain circumstances that in fact do not yet exist, the performance will not take place, are not held to create an immediate right of action.[10] Similarly, the expression of doubt as to whether the ability to perform in accordance with the contract will exist when the time comes, is not a repudiation,[11] nor is a request for delay,[12] or a request for cancellation,[13]

---

[9] 4 Corbin, Contracts, p. 905, sec. 973.

[10] Ibid.

[11] 4 Corbin, Contracts, pp. 914, 915, sec. 974.

[12] *Petoskey Portland Cement Co. v. E. V. Benjamin Co.* (6th Cir. 1924), 296 Fed. 9.

[13] *Mattison Machine Works v. Nypenn Furniture Co.* (1926), 286 Pa. 501, 134 Atl. 459.

a repudiation within the meaning of sec. 64 of the Uniform Sales Act.

Tested by the foregoing, the record does not reflect conduct on the part of the plaintiff which amounts to repudiation. Both parties, as evidenced by their subsequent conduct, did not consider the contract as breached or repudiated, until some time late in 1957, at which time the impasse as to payment and standards ("3A" and Chicago board of health) became the *coup de grace*. Therefore, under the facts and applicable law, defendant was not entitled to recover damages on its counterclaim, particularly since shipment was agreeably conditioned upon plaintiff's request.

*Claimed breach of contract by defendant.* The trial court found that the plaintiff failed to prove the allegations contained in its complaint. In one respect this finding is supported by the evidence: Plaintiff did not establish with certainty that it lost any profits resulting from defendant's alleged breach, and on appeal plaintiff does not take issue with this finding as to its second cause of action. Plaintiff, however, does contend that it is entitled to a refund of its $5,000 deposit because of defendant's breach. In this respect plaintiff alleges that defendant breached the contract in three respects: (1) In failing to manufacture the tanks and valves so as to meet "3A" and Chicago board of health standards; (2) in failing to make timely delivery of the tanks; and (3) in unilaterally attempting to change the terms of payment by demanding C.O.D. terms.

As to the first contention, the evidence is in dispute as to whether the tanks and valves met "3A" standards. The defendant admits, however, that the tanks and valves were never approved by the Chicago board of health. Unfortunately, no finding of fact was made on either point. Thus, unless this court so finds as a matter of law (which we are unable to do), the plaintiff's right to a refund must rest on

one of the remaining grounds. The second ground—timely delivery—may be summarily disposed of because the record reflects that the plaintiff itself requested a delay in shipment. This alone would be tantamount to a waiver of the time element, which brings us to the third ground asserted by the plaintiff: That the defendant breached the contract by insisting that the plaintiff pay C.O.D. minus a credit for a pro rata amount of the $5,000 deposit. This, in our opinion, constitutes a breach of contract by the defendant.[14]

In *Richards v. Manitowoc & Northern Traction Co.*[15] this court stated the general rule to be that the refusal of one party to perform his part of an executory contract unless the other party consents to a modification constitutes a total breach of the contract. Such is admittedly the case here.

---

[14] In *Stolper Steel Products Corp. v. Behrens Mfg. Co.* (1960), 10 Wis. (2d) 478, 103 N. W. (2d) 683, the court was concerned with whether there had been a breach of contract by the plaintiff manufacturer who had contracted to fabricate water bubblers for the defendant at prescribed price terms and according to specifications, and the possible waiver of that breach by the defendant; when additional machine work had to be done on certain of the parts the plaintiff requested an increase in price; although there were repeated delays in performance the plaintiff never indicated it intended not to go ahead unless the price increase was accepted, but the defendant had someone else take over the work after canceling its order to plaintiff. The trial court held for the defendant when the plaintiff sued for its cost of manufacture, concluding that plaintiff had breached the contract and that the defendant had a right to cancel. The supreme court reversed and granted judgment to the plaintiff on the basis that although plaintiff may have breached the contract by its delays, this breach was waived and even consented to by the defendant and it had no right to cancel without first giving the plaintiff notice of a final date for completion of the job which would have given the plaintiff a reasonable chance to perform. This case is distinguished from the case at bar because here the breach of contract by defendant manufacturer in changing the terms of payment was not waived or consented to by the plaintiff ice-milk distributor, and it therefore had a right to treat the contract as breached and sue for a refund of the $5,000 deposit.

[15] (1909), 140 Wis. 85, 121 N. W. 937.

Therefore, plaintiff is entitled to rescind and recover its $5,000 deposit, minus, however, the price of the machines it has accepted. Unfortunately, again the record is not clear as to the price of the tanks actually delivered and accepted. The findings state that the number was seven, which may be accepted as a verity, but since two different priced tanks were ordered, it is conceivable that both types were delivered. Thus, it is necessary that a finding be made on this point.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing defendant's counterclaim, and to enter judgment in favor of plaintiff on its first cause of action in the sum prayed for, minus the agreed price of the seven tanks delivered to and received by the plaintiff.

GORDON, J., took no part.

FAIRCHILD, J. (*dissenting in part*). I agree with reversal because the record indicates that plaintiff was not given an adequate hearing in the county court after the original judgment had been reversed in the circuit court. I also agree that the finding that plaintiff repudiated the contract in August, 1956, cannot be sustained.

In my opinion, however, the record would sustain findings (1) that the contract did not make the defendant responsible for fulfilling Chicago board of health standards; (2) that plaintiff did not treat defendant's insistence on new terms of payment as a breach;[1] and (3) that plaintiff's refusal in 1957 to accept tanks not approved by the Chicago board of health was a repudiation of the contract, and so treated by defendant. Such findings would support judgment in favor of defendant, at least on plaintiff's complaint. Thus I do

[1] See *Stolper Steel Products Corp. v. Behrens Mfg. Co.* (1960), 10 Wis. (2d) 478, 490, 103 N. W. (2d) 683.

not agree that this court is in a position to direct judgment in favor of plaintiff as a matter of law.

I am authorized to state that Mr. Justice CURRIE joins in this opinion.

