REPINSKI and wife, Appellants, v. CLINTONVILLE FEDERAL SAVINGS & LOAN ASSOCIATION, Respondent.

*No. 156.   Argued November 2, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 351.)

For the appellants there was a brief by *Jerome H. Block*, attorney, and *F. David Krizenesky* of counsel, both of Appleton, and oral argument by *Mr. Krizenesky*.

For the respondent there was a brief by *Clifford C. Mullarkey* of Clintonville, attorney, and *Edward J. Hart* of Waupaca of counsel, and oral argument by *Mr. Hart*.

HALLOWS, C. J. When there is credible evidence which under any reasonable view fairly admits of an inference which is sufficient to support the jury's finding, the trial court should not change the finding. *Rodenkirch v. Johnson* (1960), 9 Wis. 2d 245, 248, 101 N. W. 2d 83; *Kinsman v. Panek* (1968), 40 Wis. 2d 408, 414, 162 N. W. 2d 27. Consequently, we must review the evidence to determine whether it was error for the trial court to change the answer in the verdict.

In July, 1966, Clintonville and the Repinskis entered into an agreement for a mortgage loan for the construction of a new home in Outagamie county. The loan was for $17,300 at six and one-half percent interest and was payable in instalments over a period of twenty-five years. From this loan, $800 was used to pay the premium of the mortgage-life-insurance policy, but this insurance was not required by Clintonville for the making of the loan. The Repinskis deposited $5,086.50 with Clintonville to cover the balance of the cost of the new home and $5,000 of this was paid to the contractor during the early stages of construction.

In March, 1967, Clintonville inspected the new home and found it 97 percent completed. At this time Repinskis were in dispute with the contractor over extras and Mr. Repinski instructed Clintonville not to make pay-

ments to the contractor. Failure to make the payment resulted in the commencement of a lien-foreclosure action on July 21, 1967, by the contractor. During that month Repinskis were also having marital problems and Mr. Repinski left the home to live in Appleton. On July 14, 1967, he phoned Clintonville to inform it of his new address. Mr. McIntyre testified on behalf of Clintonville that during this conversation, Mr. Repinski requested the cancellation of the loan. Repinski in his testimony denied he made such a request.

It is undisputed McIntyre suggested to Repinski to cancel his mortgage-life-insurance policy and subsequently the mortgage-life-insurance policy was cancelled by Repinski and the return premium was paid to Clintonville. On September 25, 1967, a default judgment was entered in the foreclosure action and Clintonville's first mortgage to the extent of $228.72 was recognized. Shortly thereafter Repinski made a settlement with the contractor. He also became reconciled with his wife. When requested to pay the contractor by Repinski, Clintonville refused to abide by its loan commitment. Repinskis then negotiated a new loan with another lender at a one fourth of a one percent higher rate of interest amounting to an increase of $846, and with additional costs of $550.

The evidence presented to the jury a disputed issue of whether Repinski cancelled the contract because of his difficulties with his wife and the contractor, or whether Clintonville took advantage of the situation to get out of its commitment because of the rising interest rates. Whether Repinski's version of the phone call or that of Clintonville was to be believed depended upon the credibility of the witness and presented a question for the jury to decide. The inferences to draw from the other facts were likewise for the jury. The trial court drew inferences which supported the view espoused by

Clintonville. It believed the testimony of McIntyre that Repinski phoned him to cancel the loan, but the jury believed Repinski. The jury had a right to believe Repinski did not cancel the loan agreement; that the cancellation of the insurance was to save money to help pay for the extras; that Repinski wanted no money paid to the contractor so he would have some bargaining advantage and there was no intention to abandon the building project because of his marital difficulties. Whether this view is supported by the greater weight of the evidence is immaterial when the jury is the fact finder and the evidence is sufficient to meet the burden of proof. We think there were two reasonable views the evidence would support. When more than one reasonable view may be supported by credible evidence, the trial court must accept the view reached by the jury. *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 151 N. W. 2d 706. The trial court erred in finding as a matter of law that there could reasonably be only one view of the evidence and therefore the trial court committed error in changing the answer of the verdict. *Millard v. North River Ins. Co.* (1930), 201 Wis. 69, 228 N. W. 746; *Auster v. Zaspel* (1955), 270 Wis. 368, 71 N. W. 2d 417; *Jost v. Dairyland Power Cooperative* (1969), 45 Wis. 2d 164, 172 N. W. 2d 647.

The verdict submitted was confusing and we think the jury was misled in its finding Repinskis suffered no damages. The trial court did not reach this question in its opinion. The verdict inquires, "What sum of money will reasonably compensate the plaintiffs, David Repinski and Bonnie Repinski, his wife, as a result of such cancellation, with respect to: (a) Additional interest payable on the new loan? . . . (b) Cost in connection with obtaining new loan, consisting of recording fee, survey costs, title insurance, 1% loan charge, appraisal fee, credit report, MGIC Insurance, and title

examination?" This question was to be answered only if question number one was answered "No." But a no answer to the first question would imply that Clintonville wrongly breached its loan commitment because Repinskis did not cancel it. However, question two refers to the "result of such cancellation" and this can only refer to the Repinskis' cancellation. The question should have referred to Clintonville's breach, not to Repinskis' cancellation; or better, the two questions should have been on the same basis, *i.e.*, did Clintonville breach its contract? Obviously, the jury was misled in answering question two because the evidence is undisputed and shows Repinskis did incur additional expense in acquiring the new loan. The answers are clearly contrary to the evidence and cannot stand.

An award of damages for breach of contract should compensate the injured party for losses necessarily flowing from the breach. Restatement, 1 *Contracts*, pp. 503, et seq., sec. 329; 5 Williston, *Contracts* (rev. ed.), p. 3762, sec. 1338; *Dehnart v. Waukesha Brewing Co.* (1963), 21 Wis. 2d 583, 124 N. W. 2d 664. When litigation is a natural and proximate result of the breach, recovery may be had as damages for attorney's fees necessarily incurred in that litigation. *Weinhagen v. Hayes* (1922), 179 Wis. 62, 190 N. W. 1002. However, attorney's fees incurred by the Repinskis in the lien-foreclosure action were not a result of Clintonville's refusal to release the proceeds of the loan when requested in October. These fees became a liability when the judgment was entered and this was not due to Clintonville's failure to perform. The evidence does not support Repinskis' contention that their settlement with the contractor for $700 included the attorney's fees and because they did not have the Clintonville proceeds, the deal fell through and they were required to pay the attorney's fees.

It is not disputed that interest rates on mortgage loans were increasing during 1967 and the increase in interest rate of the new loan amounted to $846. This additional interest is a direct result of the breach of the loan agreement and is recoverable as damages.

In making the subsequent mortgage loan, the Repinskis were required to spend an additional $550 in loan charges consisting of mortgage-title policy, MGIC premium, survey, appraisal fees, loan fee, and similar items. These were necessary because of the breach. It is quite true that Repinskis would have had some cost for an additional loan above the Clintonville loan if Clintonville had fulfilled its loan agreement, but this cost is not definite in the record. It remains that Clintonville's breach required a new loan. Since there is no factual dispute over the amount of damages and they can be computed with mathematical accuracy, they may now be determined without a new trial.

We find no merit in Clintonville's arguments that the greater rate of interest reflected Repinskis' credit rating, that the finance costs at the Bank of Menasha were greater than in the Fox River Valley, and that its motions for a directed verdict and for judgment notwithstanding the verdict should have been granted. We do not agree Repinski's conduct was an anticipatory breach of the loan agreement and therefore Clintonville was justified in refusing to keep its commitment. To establish an anticipatory breach of a contract, a definite and unequivocal manifestation of an intention on the part of the repudiator must be proved that he will not give the promised performance when the time fixed for it in the contract arrives. In short, he intentionally repudiates his obligation in advance. 4 Corbin, *Contracts*, pp. 914, 915, sec. 974; 11 Williston, *Contracts* (3d ed.), p. 76, sec. 1300; *Wisconsin Dairy Fresh v. Steel & Tube Products Co.* (1963), 20 Wis. 2d 415, 427, 122 N. W. 2d 361.

In *Amberg v. Marinette County* (1945), 247 Wis. 36, 18 N. W. 2d 496, relied on by Clintonville, this court ruled the right to assert the doctrine of anticipatory breach is exceptional and permitted only when the future breach is conclusively established. The evidence in this case falls short of conclusively establishing an anticipatory breach on the part of the Repinskis or even a "prospective inability to perform."

*By the Court.*—Judgment reversed, with directions to the trial court to reinstate the jury's answer to Question 1 in the verdict, to change the answer to Question 2(a) to $846 and the answer to Question 2(b) to $550, and to order judgment for the Repinskis accordingly.