**METROPOLITAN TRANSFER STATION, INC., Plaintiff-Appellant, Cross-Appellee,**

v.

**DESIGN STRUCTURES, INC., Defendant-Appellee;**

**Len Construction Company, Merchants Mutual Bonding Company, and Leonard C. DePhillips, Defendants-Appellees, Cross-Appellants.**

No. 2–66403.

Court of Appeals of Iowa.

Oct. 28, 1982.

Lawrence F. Scalise and Ann Fitzgibbons of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for plaintiff-appellant.

Ray Conley, Des Moines, for defendants-appellees-cross-appellants Len Const., Merchant's Mut. and Leonard C. DePhillips.

JOHNSON, Judge.

Plaintiff, Metropolitan Transfer Station, Inc., appeals from the amount of the damage award in its action for breach of contract due to defects in the construction of its garbage transfer station. Plaintiff contends 1) that it was entitled to damages for the interest it paid on a loan taken out to pay for the repair of the defects; 2) that it was entitled to lost revenues while the transfer station was closed for repairs; and 3) that the trial court abused its discretion by allowing testimony of a structural engineer, whose firm developed plans to repair the facility, on the grounds that he was an expert witness retained in anticipation of litigation and that his testimony was barred by Iowa Rule of Civil Procedure 122(d)(2). On cross-appeal, defendants, Len Construction Company and Leonard DePhillips, assert that the trial court should have found as a matter of law that the damage to plaintiff was caused by plaintiff's abuse of the structure and that there was not substantial evidence that the structural failure was caused by defective construction. Because defendants' notice of cross-appeal was untimely, we dismiss the cross-appeal. On plaintiff's appeal, we affirm in part and reverse in part.

Plaintiff is the owner of a garbage transfer station in Des Moines, Iowa. This is an enclosed building in which garbage trucks dump their loads; the garbage is then compacted, loaded on semi-trucks, and taken to the landfill. The purpose of the station is to avoid unnecessary long trips to the landfill by smaller garbage trucks. Plaintiff contracted with defendant, Design Structures, Inc., as the general contractor to design and perform all work required for construction of the facility. Defendant Len Construction Co., owned by defendant DePhillips, was hired as a subcontractor. Defendant Merchant's Mutual supplied the construction bond. Either just before or shortly after the facility was finished, plaintiff, defendant Len Construction, and defendant DePhillips, individually, executed a contract wherein defendants agreed to repair any damage in the concrete work caused by faulty construction that occurred within 36 months from the date of completion, and to reimburse plaintiff for any loss of revenue occasioned by faulty construction.

The concrete floor, a retaining wall, and the drives proved defective within a short time after the opening of the facility. When a fire required closing of the facility for a period in May, 1979, plaintiff decided to repair both the fire damage and the defective concrete work at the same time. A different construction company was hired to repair the concrete work, at an eventual

cost of about $44,000. Plaintiff borrowed this money and paid $8,000 interest on it.

A default judgment was entered against defendant Design Structures before trial. At trial, defendants called as a witness John Hart, president of the firm which designed the repair work. Plaintiff objected to his testimony on the ground that Hart had been retained by plaintiff as an expert in anticipation of litigation and, thus, should not be allowed to testify. The court sustained the objection but allowed the testimony as an offer of proof, then in its decision reversed its ruling and held Hart's testimony admissible. Hart testified that the design of the facility was grossly deficient.

The court concluded that plaintiff's damages were caused one-half by defective design and one-half by defective construction and held defendants, Len Construction and DePhillips, liable for $22,000, one-half of the direct cost of the repairs. The court did not decide whether the interest expense should be part of the damages, although plaintiff had asked for interest in its petition and renewed the request in a posttrial rule 179(b) motion. Trial court denied both parties' posttrial motions with the comment that the result "did justice."

■ **I. Scope of Review.** Since this is an action at law, our review is on assigned error only. Iowa R.App.P. 4.

**II. Damages.** Plaintiff asserts that the trial court erred in awarding damages in the amount of $22,000. Specifically, plaintiff contends it is entitled to recover against defendants 1) lost interest and 2) lost revenue.

While trial court did not address plaintiff's claim for interest in its findings and conclusions, the court did address the issue of lost revenue. Plaintiff subsequently filed a timely motion to enlarge findings pursuant to Iowa Rule of Civil Procedure 179(b), specifically asserting the interest and revenue issues. Trial court summarily overruled plaintiff's motion.

■ "... [A] rule 179(b) motion is essential to preservation of error when a trial court fails to resolve an issue, claim, defense or legal theory properly submitted for adjudication." *Arnold v. Lang,* 259 N.W.2d 749, 753 (Iowa 1977). A rule 179(b) motion may be targeted at either conclusions of law or findings of fact. *Suckow v. Boone State Bank & Trust Co.,* 314 N.W.2d 421, 424 (Iowa 1982). In the present case the trial court was presented with an issue omitted in its original findings and conclusions and was provided an opportunity to address the issue by plaintiff's 179(b) motion. Due to trial court's summary ruling, we conclude that trial court denied plaintiff's request for interest and, accordingly, find that plaintiff preserved the issue for our review.

**A. Recovery of Borrowing Cost and Interest as an Element of Damages.** Plaintiff asserts that it is entitled to recover from defendant an additional $4,000, which represents one-half the amount of interest plaintiff paid to a third party for borrowing money to repair its facility due to defendant's faulty construction. Plaintiff actually paid $8,000 in interest charges on the borrowed money but ascribes half of the amount to the co-defendant based upon trial court's finding that the damages were to be apportioned fifty percent to Design Structures and fifty percent to Len Construction and Leonard DePhillips.

Initially, it is important to distinguish between interest as an item of damage or loss which is related to a substantive claim and interest based upon a percentage of the judgment as permitted under Iowa Code § 535.3 (1981). It is evident after an examination of plaintiff's argument, the record, and section 535.3 that plaintiff is seeking interest related to a substantive claim which is not governed by section 535.3. We must then address whether such interest is recoverable under general principles of damages. *See United Telecommunications v. American Telephone & Communications Corp.,* 536 F.2d 1310, 1314 (10th Cir.1976).

■ "Under Iowa law, when a contract has been breached, the innocent party is generally entitled to be placed in a position

he would have occupied had there been performance." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634, 639–40 (8th Cir.1975).

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be either such as may be fairly and reasonably be considered arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it."

*Mihills Manufacturing Co. v. Day Brothers,* 50 Iowa 250, 252 (1878) (quoting *Hadley v. Baxendale,* 25 E.L. & E., 398). Foreseeability of the type of damage is the focus of Iowa law. *See DeWaay v. Muhr,* 160 N.W.2d 454, 458–59 (Iowa 1968). "These damages are generally categorized as 'consequential damages.'" *Walker Manufacturing Co. v. Henkel Construction Co.,* 346 F.Supp. 621, 635 (N.D.Iowa 1972).

▪▪ The court has stated that "interest may be considered as an element of damages under the rule which permits its allowance in order to arrive at the sum which will be just and lawful compensation for the injury sustained." *Richmond v. Sioux City Railroad Co.,* 33 Iowa 422, 502 (1871). By analogy, interest may be recoverable as a "consequential" damage under Iowa Code § 554.2715 (1981) within the meaning of the Uniform Commercial Code. The Iowa courts additionally permit the recovery of lost profits so long as the profits are not based upon conjecture and speculation. *Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 284–86 (Iowa 1979). *See also Repinski v. Clintonville Federal Savings & Loan Association,* 49 Wis.2d 53, 181 N.W.2d 351 (1970) (applying the standard for lost profits to lost interest).

Other jurisdictions have recognized that interest, as a borrowing cost, owed to third parties may be recoverable. *See United Telecommunications,* 536 F.2d at 1314 (interest recoverable where plaintiff "showed the amount of its borrowing cost and a nexus between these costs and the breach" of defendant in failing to register plaintiff's securities); *New Amsterdam Casualty Co. v. Mitchell,* 325 F.2d 474 (5th Cir.1963) (recovery of additional interest on construction loan because of builder's delay permitted); *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541 (Mo.App.1973) (recovery of additional interest on construction loan because of builder's delay permitted); *Thompson v. Hanson,* 6 Wash.App. 1, 491 P.2d 1065 (1971) (trial court permitted recovery for interest payments due to defendant's delay but was reversed on appeal on the ground that it was not foreseeable); *Repenski v. Clintonville Savings & Loan,* 49 Wis.2d 53, 181 N.W.2d 351 (1970) (recovery of additional interest charge permitted because of defendant's promise to loan money at favorable rate). *See also Carl Beasley Ford, Inc. v. Burroughs Corp.,* (E.D.Pa.) 361 F.2d 325 (1973), affirmed in unpublished opinion 493 F.2d 1400 (3rd Cir.1974). *Cf. Weiner v. 222 East Chestnut Street Corp.,* 303 F.2d 630 (7th Cir.1962). We find such reasoning persuasive here. Accordingly, we hold that the nondefaulting party may recover consequential costs, including interest payments to third persons which are reasonably foreseeable and proximately caused by the defaulting party's breach, in a contract action.

▪▪ There is ample evidence in the record that plaintiff would not have needed to borrow the money had defendants performed. In a commercial setting such as this, we conclude it is foreseeable that plaintiff would have to borrow the money and would incur interest charges. Since trial court summarily overruled plaintiff's 179(b) motion without addressing the facts and conclusions to be enlarged, we have no trial court finding which is binding upon us. Accordingly, we find that plaintiff was entitled to recover the $4,000 of interest costs.

**B. Lost Revenue.** Plaintiff claims the trial court erred in not permitting it to recover the lost revenue during the period of time that the transfer station facility

was closed for repairs. Plaintiff bases its claim for recovery on both a consequential damage theory and contractual theory.

■ It is well established in a case tried to a court that:

> ... trial court's findings of fact have a force of a special verdict, [citation] and are binding on us if supported by substantial evidence, [citation]. Evidence reviewed for its substantiality is to be viewed in the light most favorable to the judgment. [citation] We are not bound by the trial court's determinations of law, however, nor precluded from inquiring into whether trial court applied erroneous rules of law which materially affected its decision. [citation]

*Blunt, Ellis & Loewi, Inc. v. Igram,* 319 N.W.2d 189, 192 (Iowa 1982). This general rule does not preclude "inquiry into the question whether, conceding the truth of the facts found, a conclusion of law drawn therefrom is correct, nor are we bound by trial court's determination of the law." *Briggs Transportation Co., Inc. v. Starr Sales Co., Inc.,* 262 N.W.2d 805, 811 (Iowa 1978).

On January 19, 1977, the plaintiff entered into a contract with defendants, in which defendants agreed that if the retaining wall failed within 36 months, due to construction faults, defendants would repair the defects. Defendants additionally agreed:

> That in the event the Metropolitan Transfer Station, Inc.'s facilities at 4198 Deleware are closed so that its normal course of business cannot be conducted thereon because of the fact that the retaining wall is under repair due to faulty construction thereof by Len Construction Company and Leonard C. DePhillips, then and in that event, Leonard C. DePhillips and Len Construction Company shall be responsible for all loss of revenue occasioned by said faulty construction.

The record reflects that after the May 6, 1979, fire, the facility was closed for seven to nine days to make repairs relating to fire damage. Upon defendants' refusal to remedy structural defects at that time, plaintiff retained another construction firm to cor-

rect the structural defects in the facility. At the end of the first seven to nine days after the fire, the facility was partially opened, but its capabilities were limited. The facility was in full operation on June 18, 1979. Plaintiff testified that from May 16 to June 18 he lost approximately $60,000 in lost revenue. The trial court denied recovery on the basis of the following facts:

> The plaintiff's proof as to loss of revenue for that period when the business was closed for those repairs made necessary by the defendant's breach of the contract is complicated by the fact that the fire on May 6, 1979, forced the business to close. The matter is further confused by the fact that the fire on May 6, 1979, forced the business to close [sic]. The matter is further confused by the fact that the design failures in no way attributable to defendants Len Construction and Leonard DePhillips were corrected and repaired at the same time. It is the finding of the court that those repairs necessitated by Len Construction's breach of a contract were of such a nature that they were performed substantially at the same time as those design corrections and did not materially extend the time period that the transfer station was closed.

We conclude that the trial court erred in denying recovery of lost revenue.

The construction of a contract is a matter of law to be decided by the court. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.,* 266 N.W.2d 22, 25 (Iowa 1978). Defendants promised to "be responsible for loss of revenue occasioned by said faulty construction." The trial court, in fact, found defendants negligent in construction and prorated liability on a 50–50 basis. Yet the trial court excused performance of the contract on the basis that correction of construction defects "did not materially extend the time period that the transfer station was closed."

■ Full performance of a duty under a contract discharges that duty. Conversely, nonperformance of a duty under the contract is a breach, unless performance is

excused. *See* Restatement (Second) of *Contracts* § 235 (1979). The Iowa courts have recognized various excuses for nonperformance of a contract. *See Associated Grocers of Iowa Cooperative, Inc. v. West,* 297 N.W.2d 103 (Iowa 1980) (impossibility as excuse); *Parker v. Scott,* 82 Iowa 266, 47 N.W. 1073 (1891) (act of God as an excuse); *Hardin v. Eska Co.,* 256 Iowa 371, 127 N.W.2d 595 (1964) (interference by third party as excuse).

In the present case, the trial court found that in the contract of January 19, 1977, defendants "agreed to reimburse the plaintiff ... for any loss of revenue occasioned by any [constructural defect]." The trial court further found that defendants "refused to make repairs ... to the walls and floors." Additionally, the trial court concluded defendants failed to: 1) follow the plans of the architect; 2) install all the wire mesh required; and 3) connect the steel rods used in the wall and slab floor. On the basis of the above facts, the trial court found both "faulty design and faulty workmanship" and ordered that damages be apportioned equally. Yet the trial court refused to impose the contractual obligation of defendants to reimburse plaintiff for lost revenues on the basis that corrections were "performed substantially at the same time as those design corrections and did not materially extend the time period that the transfer station was closed." We find that the trial court erred in excusing defendants' performance under the contract for "not materially extend[ing] the time."

The plaintiffs specifically bargained for lost revenues if defendants' performance proved to be negligent. The trial court, in fact, found that defendants were negligent in their construction and that defendants refused to perform under the contract. The trial court also concluded that such failure was a breach of contract on the part of defendants. It is not the purpose of the law to reward the breaching party. *See Davenport Osteopathic Hospital Association, Iowa v. Hospital Service, Inc., of Iowa,* 261 Iowa 247, 255, 154 N.W.2d 153, 158 (1967). The party to a contract who fails to perform "is responsible for such consequences of his failure as must have been contemplated by the parties when they entered into the agreement ...." *Wood v. Chicago, Milwaukee & St. Paul Ry. Co.,* 68 Iowa 491, 500, 27 N.W. 473, 477 (1886).

Not only is defendants' failure to perform not excused, but they also should not escape liability on the ground that the measure of damages attributable to them is uncertain. "[D]amages should not be denied merely because the amount is difficult to ascertain so long as the fact that some damages were sustained is evident." *Palmer v. Albert,* 310 N.W.2d 169, 174 (Iowa 1981). It is readily apparent that plaintiff sustained damages in the form of loss of revenue due to defendants' breach of contract. The trial court had no problem in prorating liability between the defendants on a 50–50 basis. Why the trial court hesitated to apportion damages on the basis of a breach of contract on the same basis is not apparent to this court. We find, therefore, that trial court erred in not awarding damages to plaintiff on the basis of defendants' breach of contract. We remand this case to the trial court for entry of judgment in favor of plaintiff against defendant for $32,264.67 as that portion of lost revenue attributable to these defendants.

**III. Expert Testimony.** Plaintiff also contends that trial court erred in permitting John Hart, a structural engineer, to testify because such testimony was barred by Iowa Rule of Civil Procedure 122. Defendant contends that Mr. Hart was not an expert whose information was acquired in anticipation of litigation but, rather, was an individual testifying from personal observations and an actor within the sequence of events leading up to litigation. We agree with defendants.

Rule 122(d)(2) provides that:
A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as

provided in R.C.P. 133 or upon a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject matter by other means.

Plaintiff's argument that this discovery rule provides a basis for privilege at trial is indeed novel. Plaintiff asks us to transform a limitation on discovery into a privilege at trial. This we cannot do.

Iowa has many recognized evidentiary privileges. *See e.g.,* Iowa Code § 622.10 (1981) (attorney-client, physician-patient, priest-penitence); Iowa Code §§ 622.7–622.9 (1981) (husband-wife); Iowa Code § 622.11 (1981) (public officer). *See also* Fed.R.Evid. 501.

> Testimonial exclusionary rules and privileges contravene the fundamental principle that " 'the public . . . has the right to every man's evidence.' " [citation] As such, they must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence as a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." [citation]

*Trammel v. United States,* 445 U.S. 40, 50–51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186, 195 (1980). Plaintiff neither cites authority nor gives any policy justifications for warranting the limitation of relevant and material evidence other than rule 122.

 The purposes of discovery are to "narrow and clarify the basic issues between parties, and . . . a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388–89, 91 L.Ed. 451, 457 (1947). *See also White v. Citizens National Bank of Boone,* 262 N.W.2d 812, 816 (Iowa 1968). The federal rules regarding discovery of experts closely parallels that of Iowa. Both provide that an expert's identity who is "specifically employed . . . in anticipation of litigation" and not expected to testify at trial can be discovered only upon a showing of "exception-al circumstances." In determining whether an expert is employed in anticipation of litigation, the Tenth Circuit has set forth several factors to be considered. They include:

> (1) The manner in which the consultation was initiated;
>
> (2) The nature, type and extent of information or material provided to, or determined by, the expert in connection with his review;
>
> (3) The duration and intensity of the consultative relationship; and,
>
> (4) The terms of consultation, if any, (e.g. payment, confidentiality of test data or opinions, etc.).

*Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496, 499 (10th Cir.1980). In the advisory notes, the federal rules committee, in discussing rule 26(b)(4)(B) stated:

> It should be noted that the subdivision [subdivision (b)(4) trial preparation: expert] does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

Fed.R.Civ.P. 26 advisory committee note.

 Mr. Hart may well be an expert in the field of structural engineering, but in this instance he was retained to develop plans for the renovation of plaintiff's facility. During the demolition he had a first-hand opportunity to examine the design and construction of plaintiff's facility. He testified as to deficiencies in both. At trial Mr. Hart testified that he was not retained for the purpose of litigation. Based upon the foregoing, we find no error in the trial court's admission of Mr. Hart's testimony as we conclude that it was not governed by Iowa Rule of Civil Procedure 122(d).

**IV. Cross-Appeal.** Defendant concedes that its notice of cross-appeal is untimely,

thus, there is nothing further for us to review.

**V. Summary.** We affirm the trial court's admission of the testimony of John Hart. Further, we reverse the trial court's judgment with regard to recovery of interest and lost revenue and remand to the trial court for entry of judgment consistent with this opinion. Finally, we dismiss defendants' untimely cross-appeal.

AFFIRMED IN PÁRT; REVERSED IN PART; AND REMANDED FOR ENTRY OF JUDGMENT. CROSS–APPEAL DISMISSED.