**RENZE HYBRIDS, INC., Appellee,**

v.

**SHELL OIL COMPANY, Appellant.**

No. 86–460.

Supreme Court of Iowa.

Jan. 20, 1988.

As Corrected Feb. 23, 1988.

Robert A. Hutchison and Monte R. Hanson of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellant.

Robert W. Peters, P.C. Carroll, and Thomas L. McCullough of McCullough Law Firm, Sac City, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, SNELL and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

This case arose out of the alleged failure of an insecticide produced by the defendant Shell Oil Company (Shell) to kill enough European corn borer larvae in the seed corn fields of plaintiff Renze Hybrids, Inc. (Renze), to avert economic loss. After the ensuing trial for breach of implied warranties, the jury found Shell 75% at fault for Renze's crop losses. Shell now raises several issues upon appeal. Shell challenges four evidentiary rulings, submission to the jury of two theories of recovery, a jury instruction on an act of God defense, and the trial court's submission to the jury of interest as an element of damages. We reverse on the interest issue and affirm all other rulings. Finding the issue of interest improperly submitted, we order that portion of the jury's award deleted from the judgment entered by the trial court.

I. *Background facts and proceedings.* Plaintiff Renze Hybrids, Inc., is a family owned seed corn business and has been in operation since 1939. The corporation farmed 16 fields of seed corn in Carroll County, Iowa in 1983, covering approximately 1100 acres.

In early August 1983, Cyril Renze, president of the Renze corporation, became concerned with the substantial quantity of European corn borer eggs he noticed on corn plants in his daily monitoring of the Renze fields. He learned from Dr. David Foster, an extension entomologist with Iowa State University, that there were only three insecticides on the market used to kill European corn borers. Cyril Renze then approached Jerry Broiche, representative of Cal–Car Service Company, seeking help with his infestation problem. Broiche, in turn, spoke with representatives from Shell and was told that Shell's product, Pydrin, could be used to control corn borer infestation. Broiche passed on this information to Cyril Renze who then decided to spray the Renze acres with Pydrin. Broiche applied the insecticide to Renze's fields and also sprayed surrounding grasses and waterways to cover areas near the corn where European corn borer moths might breed.

Pydrin appears to have been ineffective in controlling corn borers enough to prevent economic loss in Renze's seed corn fields. Despite proper application of Pydrin while the corn borer eggs were beginning to hatch, Renze's fields sustained measurable damage from the corn borer larvae. Renze brought suit for its crop losses and other items asserting that Shell breached implied warranties of fitness for a particular purpose and merchantability. *See* Iowa Code §§ 554.2315, 554.2317 (1985). Expert witnesses for both sides testified at trial, as did Cyril Renze and Jerry Broiche.

Based upon the evidence submitted, the jury determined Renze's crop losses at $549,816.00 and his lost interest due to the crop loss to be $139,653.00, for a total of

$689,469.00. On the issue of comparative fault, the jury found defendant Shell 75% at fault. Accordingly, the trial court entered a judgment in favor of plaintiff against Shell for 75% of $689,469.00 or $517,101.75 plus interest pursuant to Iowa Code section 535.3 from the date the petition was filed.

On appeal, Shell makes nine assertions of error. We address them in turn, adding relevant facts from the record where necessary.

II. *Implied warranty of fitness for a particular purpose.* At the close of plaintiff's evidence, Shell moved for a directed verdict asserting that there was not substantial evidence to support submission to the jury of plaintiff's claims of breach of warranty of fitness for a particular purpose and breach of warranty of merchantability. *See* Iowa R.Civ.P. 243; *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477–78 (Iowa 1982) (claim without support of "substantial evidence" should not be submitted to a jury). We disagree with defendant on both counts.

■ The Uniform Commercial Code (UCC) is codified in Iowa Code chapter 554. Renze's claim of breach of warranty of fitness for a particular purpose is grounded in Iowa Code section 554.2315 which states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Recovery under this section depends upon a showing that (1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish suitable goods; and (3) the buyer in fact relied on the seller's skill or judgment to furnish suitable goods. *Van Wyk v. Norden Laboratories, Inc.,* 345 N.W.2d 81, 84 (Iowa 1984).

■ This is a warranty distinct from the implied warranty of merchantability. Comment 2 to UCC section 2–315 contained in Iowa Code Annotated section 554.2315 notes:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

■ Shell argues that because Pydrin is one of the three commercial insecticides on the market used to kill European corn borer larvae, Renze used the insecticide for its ordinary purpose and not any particular purpose. The Pydrin label, however, lists dozens of different species of insects and the proper concentrations of Pydrin that should be mixed with water to exterminate them. Renze claims that it, through Broiche, asked Shell for the best product to deal with its specific problem of infestation by European corn borers in seed corn fields. We believe this is the type of particular purpose to which section 554.2315 was meant to apply.

Even conceding that Pydrin was being used for a particular purpose, Shell states there was no evidence to show that Shell had reason to know of Renze's needs. The former Iowa Code section on warranties of fitness for a particular purpose, Iowa Code § 554.15 (1962), required the buyer to make the particular purpose known to the seller, expressly or by implication, before the warranty was effective. That requirement was expressly changed, however, by the UCC language in 1965 Iowa Acts chapter 413, section 2315. The statute now clearly requires only that "the seller [Shell] at the time of contracting [have] reason to know any particular purpose for which the goods are required...." Iowa Code § 554.2315.

While Shell had no direct presale dealings with Renze, Shell had reason to know of Renze's needs through Shell's dealings with Broiche. We have stated that "the warranty of fitness under section 554.2315

is said to turn on the 'bargain-related' facts as to what the seller had reason to know about the buyer's purpose for the goods and about his reliance on the seller's skill or judgment in selecting them." *Van Wyk*, 345 N.W.2d at 84. Testimony by Broiche indicates that he spoke to Shell personnel and explained that he needed the best insecticide available to kill European corn borers in his client's seed corn fields. Having been approached by Broiche with this request, Shell had reason to know of Renze's particular purpose and of Renze's reliance on Shell's expertise in selecting an insecticide.

Finally, it is evident that Renze did in fact rely on Shell's skill or judgment to furnish suitable goods. We conclude there was sufficient evidence of bargain-related facts to submit this claim to the jury.

III. *Implied warranty of merchantability.* As stated above, the implied warranty of merchantability involves the fitness of goods for their ordinary purpose. In *Van Wyk*, we noted that this theory requires the plaintiff to prove (1) a merchant sold the goods, (2) the goods were not "merchantable" at the time of sale, (3) injury or damage occurred to the plaintiff's property, (4) the defective nature of the goods caused the damage "proximately and in fact," and (5) notice was given to the seller of the damage. *Id.* at 87. We conclude that substantial evidence to prove each of these elements exists in the record, and that submitting this theory to the jury was proper.

Shell's product, Pydrin, was selected as an insecticide for Renze by Broiche at Shell's suggestion after significant quantities of corn borer eggs were discovered. Broiche applied Pydrin to Renze's corn fields and surrounding grasses. Trial testimony from several witnesses indicated that the insecticide failed to kill enough corn borer larvae to prevent economic loss in Renze's fields. While no direct evidence was presented to demonstrate defects with Pydrin, there was considerable circumstantial evidence of Pydrin's failure. *Cf. Van Wyk*, 345 N.W.2d at 87 ("considerable circumstantial evidence of defect in cattle vac-cine supported jury's finding vaccine defective"). Testimony by several witnesses also indicated the failure of Pydrin to exterminate the corn borer larvae led to substantial damage to Renze's fields.

Substantial evidence, whether or not contradicted, is the litmus test of submissibility of an issue to the jury. *See* Iowa R.App. P. 14(f)(7). Based upon the evidence in the record, this issue was properly submitted to the jury.

IV. *Interest as an element of damages.* Jury instruction number 23 instructed the jury to determine the amount of plaintiff's recovery if it determined that plaintiff was entitled to recover and sustained a loss; however, the instruction did not mention interest as an element of damages. Nevertheless, the jury found Renze entitled to recover $139,653.00 in interest. This amount was based upon brief testimony by Cyril Renze estimating interest on lost income due to crop loss. The interest plaintiff was seeking is an element of consequential damages related to his substantive claim and is not interest on a judgment governed by Iowa Code section 535.3. *See Metropolitan Transfer v. Design Structures*, 328 N.W.2d 532, 535 (Iowa App. 1982); Iowa Code § 554.2715 (consequential damages for seller's breach).

Renze's testimony appears to concern interest payments Renze estimated the corporation would have had to pay had it been forced to borrow money to cover business expenses because its crop losses reduced its operating capital. In fact, no evidence exists in the record that the corporation ever borrowed specific sums of money from specific third persons due to its crop loss.

In *Metropolitan Transfer*, the court of appeals digested several cases from other jurisdictions in which interest charges owed to third persons were recoverable as consequential damages. 328 N.W.2d at 536. The court then held that "a nondefaulting party may recover consequential costs including interest payments *to third persons* which are reasonably foreseeable and proximately caused by the defaulting party's breach." *Id.* (emphasis added). In

each of the cases, money was actually borrowed b'e plaintiff from third persons and int't charges accrued thereon.

We find n'dence here that such money was borrd. Renze's attempt on appeal to upho'his award as a theoretical deprivation o'terest due to crop loss is unavailing a lacking in authority. Shell's motio'n withdraw the issue of interest as an n of damages should have been sustained'Ve reverse that portion of the trial court'dgment based upon interest. Plaintiff'ward is reduced in its principal amou'y $104,739.75 or by 75% of $139,653.00, e entire amount of the judgment again'Shell attributable to interest.

■ V. *Evid'ce of crop loss.* Shell further contend'sat Renze generated insufficient eviden'of crop loss to submit the question of 'p loss damages to the jury. Our comm'ts on the proof necessary to sustain a'mage award in *Orkin Exterminating C Inc. (Arwell Div.) v. Burnett,* 160 N.Wd 427 (Iowa 1968), are particularly relev'z here. We stated:

> Courts have cognized a distinction between proof o'the fact that damages have been susta'ed and proof of the amount of those 'mages. If it is speculative and unce'nin whether damages have been susta'id, recovery is denied. If the uncertainty'es only in the amount of damages, rec'rery may be had if there is proof of 'reasonable basis from which the amou'n can be inferred or approximated.

*Id.* at 430 (citations 'mitted).

It is clear that 'enze sustained crop damage due to corn brer infestation. The jury concluded that application of Pydrin failed to avert econ'mic loss. The expert witnesses who testified at trial estimated crop loss between 26 and 38 percent of normal seed corn production. Shell points out that plaintiff's expert witness did field tests in only two of Renze's 16 fields. Shell asserts that there is adequate proof of damages in only those two fields.

Cyril Renze testified, however, that the crop damage was fairly consistent throughout the plaintiff's fields. He has been in the business of seed corn production and sales since 1940. Shell's expert witness, Dr. Foster, admitted that Renze is particularly knowledgeable in this area. Renze's estimates of acreage production and yield reduction were based on his extensive knowledge and experience. His estimates, therefore, gave a reasonable basis from which damages could have been approximated and his testimony, coupled with that of the expert witnesses, constituted substantial evidence of crop loss. We conclude there was no error in submitting this issue to the jury.

■■ VI. *Opinion testimony of an expert witness.* Shell's expert witness, Robert Christensen, attempted to give his opinion concerning the effect of weather on Renze's crop losses, but was prevented from doing so when the trial court sustained an objection made by Renze's counsel. The objection was that Christensen's proposed opinion testimony would be based upon documents not in evidence.

As correctly pointed out by Shell, Iowa Rule of Evidence 703 states that if facts or data relied upon by an expert witness at trial are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." However, Iowa Rule of Evidence 705 adds: "The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data *unless the court requires otherwise.*" (Emphasis added.)

The trial court appears to have determined that the underlying facts and data upon which Christensen based his opinion needed to be disclosed to the jury. Counsel for Shell did not subsequently do so.

Determinations of the admissibility of opinion evidence rest largely in the trial court's discretion, and we do not interfere with such decisions unless they exhibit a manifest abuse of discretion to the prejudice of the complaining party. *State v. Dvorsky,* 322 N.W.2d 62, 64 (Iowa 1982). In the absence of the jury, the court re-

ceived Shell's offer of proof but was not asked to rule after the offer. We note the offer of proof still did not disclose the specific underlying facts or data on which the witness' opinion was based. We conclude the trial court did not abuse its discretion in the ruling excluding Christensen's opinion.

VII. *References to express warranty.* This case was pled by plaintiff on implied warranty theories. Three witnesses testified over objections by Shell's counsel to their recollection of product effectiveness claims made in Shell advertisements of Pydrin. Shell argued that any reference to Shell advertising impermissibly interjected the theory of express warranty, a theory not asserted in Renze's pleading. As argued by Renze, we believe mention of Shell's advertising in the context of the record concerning each of those witnesses was relevant to explain the timing of application of Pydrin, the length of residual effect, and the way Pydrin normally performed. We conclude that whatever prejudicial effect this evidence might have had was outweighed by its probative value. No error appears from these rulings.

VIII. *Comparable results of Pydrin use.* As part of its case in chief, defendant Shell introduced evidence from Stanley Pilcher, an agricultural researcher working for Colorado State University. Pilcher testified that he tested Pydrin on corn fields in Colorado infested with European corn borer larvae and received favorable results.

In the rebuttal portion of its case, Renze called Monte Ramohr, a Nebraska farmer, who testified to unfavorable results from the application of Pydrin to his fields in Nebraska. Shell objected to Ramohr's testimony on relevance grounds stating that Renze failed to offer any evidence of similar circumstances between Ramohr's fields and Renze's fields. The objection was overruled and Shell asserts error.

We recognize the general rule that the trial court has a good deal of discretion in determining what is proper rebuttal testimony. *State v. Hephner,* 161 N.W.2d 714, 718 (Iowa 1968); *see State v. Nelson,* 261

Iowa 204, 208–09, 153 W.2d 711, 714 (1967); 75 Am.Jur.2d *2* § 150 (1974). While Ramohr's evidence concerning Pydrin may have been of questionable relevance to the issue of Pydrin's effectiveness in Carroll County under the facts of this case, Shell somewhat opened the relevancy door by introducing evidence of Pilcher's experience with Pydrin under Colorado conditions. The trial court found Ramohr's evidence to be proper rebuttal evidence to Pilcher's testimony. We find no abuse of discretion in this ruling and, hence, no error.

IX. *Exclusion of warranty defense.* On the Friday before the Tuesday jury trial, Shell produced to Renze a document (exhibit G) containing the directions for use of Pydrin in response to a long-standing interrogatory to defendant by plaintiff. *See* Iowa Civ.P. 126. The directions included a brief written statement expressly excluding all warranties of merchantability or fitness for a particular purpose if Pydrin was used in abnormal conditions. Shell offered the document at trial both as evidence of proper mixing instructions and as support for its exclusion of warranty defense.

Renze objected that the warranty portion of the document was an untimely response to its second interrogatory. Renze's second interrogatory, requesting documents relevant to Shell's defense, was sent to Shell over a year and a half before trial. After a hearing, the trial court allowed the exhibit into evidence with the exclusion of warranty paragraph blocked out. Shell asserts the trial court erred in excluding that portion of exhibit G and in failing to instruct the jury on Shell's exclusion of warranty defense.

The trial court determined that Shell's production of this document was untimely. The court then imposed a sanction upon Shell pursuant to Iowa Rules of Civil Procedure 134(d)(2) and 134(b)(2)(B). As with other evidentiary matters, a trial court has wide discretion when imposing a sanction for failure to adequately follow discovery procedures. *R.E. Morris Investments,*

*Inc. v. Lind,* 304 N.W.2d 189, 191 (Iowa 1981). We reverse only when that discretion is abused to the prejudice of the sanctioned party. We find no such abuse here.

■ Shell objected that the exclusion provision was contained in other documents produced to Renze, giving Renze adequate notice of the language used and the defense. As the trial court noted, if other documents were produced to Renze, those other documents should have been offered into evidence by defendant.

Further, we find no other evidence in the record to support the exclusion of warranty defense. The language of the exclusion paragraph excludes warranty coverage only if Pydrin is not used in normal conditions. Shell never contended in this regard that the conditions under which Pydrin was applied to Renze's crops were abnormal. Other than dry weather during the late summer months, there is no evidence in the record of any abnormalities that might have affected Pydrin's effectiveness. Given this lack of evidence, the trial court properly withheld the exclusion of warranty instruction from the jury. We find no reversible error in these rulings.

■ X. *Act of God defense.* Finally, Shell disputes the propriety of the trial court's jury instructions on Shell's act of God defense. Shell asserted at trial that poor weather conditions contributed to Renze's crop loss and these conditions constituted an act of God.

In jury instruction number 21, the trial court instructed: "If you find from the evidence that the defendant has proved by a preponderance of the evidence that an act of God was the *sole* proximate cause of plaintiff's injuries and damages, then the plaintiff cannot recover." (Emphasis added.) In interrogatory number 7, however, the trial court gave this instruction:

> Using 100% as the total combined fault of the plaintiff, the defendant and any Act of God which was *a* proximate cause of plaintiff's damage, what percentage of such combined fault is attributable to the plaintiff, the defendant, and any such Act of God?

(Emphasis added.) These instructions appear contradictory concerning the issue of proximate cause. Responding to this interrogatory, the jury assigned 25% of the fault to Renze and 75% to Shell, attributing no fault to an act of God.

Shell contends that under comparative fault theory, fault is to be equitably apportioned among those whose fault contributed to the occurrence. It is Shell's position that an act of God can be assigned a percentage of fault just as any other party is assigned a percentage of fault. Shell asserts, therefore, that jury instruction number 21 was prejudicial error because an act of God should no longer be considered only when it is the sole proximate cause of plaintiff's injuries.

Shell's theory simply cannot be reconciled with Iowa's comparative fault act contained in Iowa Code chapter 668. Section 668.1(1) defines fault in terms of duties owed to and violated by human actors. Acts of God are not contained in that definition section of fault. Neither is God nor "act of God" a "party" as that term is defined in section 668.2. The trier of fact under the chapter is only to determine the percentage of fault of each *party.* Iowa Code § 668.3(3). The legislature did not put acts of God into this statute, and it is not for us to do so.

While natural forces may contribute some portion to plaintiff's harm, excluding acts of God from consideration is analogous to excluding the fault of unidentified tortfeasors. In *Baldwin v. City of Waterloo,* 372 N.W.2d 486 (Iowa 1985), we held that unidentified persons are not "parties" under chapter 668 and thus acts of unidentified persons are not to be considered for comparison of fault purposes. *Id.* at 492–93. We noted, however, that intervening acts of unidentified persons could be considered on the issue of proximate cause. *Id.* at 493. This is equally true for acts of God.

An act of God is not an act of a party under chapter 668. It may still be used as a defense if it is the sole proximate cause of the harm in question. In *Sponsler v. Clarke Electric Cooperative, Inc.,* 329

N.W.2d 663, 665 (Iowa 1983), we reasserted the validity of the sole proximate cause defense in Iowa. *See also* Iowa Uniform Jury Instruction 700.4 (1987) (sole proximate cause instruction includes an act of God).

We conclude that the trial court did not err in putting the burden on Shell to show that an act of God was the sole proximate cause of Renze's losses. Notably, whether the jury read the conflicting instructions to mean that an act of God had to be the sole proximate cause of Renze's losses or only a proximate cause is irrelevant. In interrogatory number 6 the jury determined that no act of God contributed to Renze's losses. We find no reversible error on this issue.

XI. *Disposition.* We find reversible error only in the submission to the jury of interest as an element of damages under this record. The portion of Renze's damage award attributable to prepetition interest is reversed. This does not affect any interest recoverable under Iowa Code section 535.3. As to all other issues raised, we affirm. The case is remanded for entry of a new judgment in conformance with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.